THE STATE EX REL. COMMITTEE FOR THE PROPOSED ORDINANCE TO REPEAL
ORDINANCE NO. 146–02, WEST END BLIGHT DESIGNATION, ET AL. *v.*
CITY OF LAKEWOOD ET AL.

[Cite as *State ex rel. Commt. for the Proposed Ordinance to Repeal
Ordinance No. 146–02, West End Blight Designation v.
Lakewood,* 100 Ohio St.3d 252, 2003-Ohio-5771.]

(No. 2003–1733—Submitted October 20, 2003—Decided October 29, 2003.)

**Per Curiam.**

{¶ 1} On December 16, 2002, respondent Lakewood City Council enacted Ordinance No. 146–02 as an emergency ordinance approving the community development plan for the city's west end district.

{¶ 2} On August 18, 2003, relator Committee for the Proposed Ordinance to Repeal Ordinance No. 146–02, West End Blight Designation, filed with respondent Lakewood Clerk of Council Mary Hagan an initiative petition containing 1,817 signatures for the proposed ordinance. On that same day, the petition was delivered to the Cuyahoga County Board of Elections to verify the signatures. On August 26, 2003, the Cuyahoga County Board of Elections verified that the initiative petition contained 1,454 valid signatures. On August 28, 2003, Hagan issued a certificate of the board's result to the committee and to the members of respondent Lakewood City Council. Hagan stated that under Section 1, Article XX of the Lakewood Charter,[1] the petition contained sufficient signatures to place the initiative before city council.

{¶ 3} On September 2, 2003, the Lakewood Director of Law requested that the city council have a first reading on the proposed ordinance and refer it to the committee of the whole for further consideration. On the same date, the committee for the proposed ordinance submitted to Hagan a supplemental

---

1. Section 1, Article XX of the Lakewood Charter provides: "Any proposed ordinance may be submitted to Council by a petition signed by qualified electors equal in number to at least five percent (5%) of the total votes cast for the office of Mayor at the last preceding regular municipal election at which a Mayor was elected."

initiative petition, which it claimed contained 231 additional signatures. The committee advised Hagan that it needed additional signatures, that time was of the essence, and that she should immediately submit the supplemental petition to the board of elections to verify the additional signatures.

{¶ 4} At the city council's regular meeting on September 2, the council had a first reading on the proposed ordinance and referred it to the committee of the whole. On September 15, 2003, the committee of the whole unanimously recommended that the city council reject the proposed ordinance to repeal Ordinance No. 146–02. At the September 15 regular council meeting, the city council unanimously rejected the proposed ordinance.

{¶ 5} On September 15, the committee for the proposed ordinance requested that the proposed ordinance be submitted to the Lakewood electorate at the November 4, 2003 general election. On September 16, 2003, Hagan sent the supplemental petition to the board of elections to verify the number of valid signatures. On September 17, the board of elections verified that the supplemental petition contained 204 valid signatures. On September 18, 2003, Hagan issued a certificate of result for these signatures to the committee and the members of the city council. Based on the total number of valid signatures contained in the initial and supplemental petitions, there was a sufficient number of these signatures for council to submit the matter to the electorate.

{¶ 6} On September 25, 2003, the committee sent a taxpayer demand to the Lakewood Director of Law to take necessary action, including legal action, to compel the city council to submit the proposed ordinance to the electorate at the November 4, 2003 general election. By letter dated the same day but mailed four days later, the law director denied the committee's demand. The law director noted that the matter had been set for city council's next regular meeting on October 6, 2003.

{¶ 7} The committee's attorney received the law director's letter rejecting the committee's demand on September 30. On October 2, relators, the committee and its members, filed this expedited election matter. Relators request a writ of mandamus to compel respondents, Lakewood, the city council, and Hagan, to submit the initiative petition to the board of elections to place the proposed ordinance on the November 4, 2003 general election ballot. According to respondents' brief, on October 6, 2003, the city council held a regular meeting, at which it enacted an ordinance to place the initiative on the March 2, 2004 primary election ballot.[2] The October 6, 2003 regular council meeting was conducted, in

---

2.  {¶ a} Section 9, Article XX of the Lakewood Charter provides:

{¶ b} "When an ordinance proposed by petition is to be submitted to a vote of the electors, the committee of the petitioners shall certify that fact and the proposed ordinance to the Clerk of

accordance with Section 121.03 of the Lakewood Codified Ordinances, beginning at 7:30 p.m. Under the charter, issues had to be submitted before 4:30 p.m. on October 6 in order to be placed on the November 4, 2003 election ballot. By October 7, 2003, the board of elections had prepared and printed absentee ballots to be used by the city for the November 4, 2003 election. The parties filed evidence and briefs pursuant to S.Ct.Prac.R. X(9), and briefing was completed on October 20.

{¶ 8} The cause is before the court for its consideration of the merits.

## Laches

{¶ 9} Respondents assert that relators' mandamus claim is barred by laches. "Extreme diligence and promptness are required in election-related matters." *State ex rel. Commt. for Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 16. " 'If a party seeking extraordinary relief in an election-related matter fails to exercise the requisite diligence, laches may bar the action.' " *State ex rel. Carberry v. Ashtabula* (2001), 93 Ohio St.3d 522, 523, 757 N.E.2d 307, quoting *State ex rel. Hills Communities, Inc. v. Clermont Cty. Bd. of Elections* (2001), 91 Ohio St.3d 465, 467, 746 N.E.2d 1115.

{¶ 10} Respondents claim that laches applies because relators should have filed this case after the city council rejected the proposed ordinance at its September 15, 2003 council meeting. They assert that this was council's "last action" pertinent to relators' claim. But council's September 15, 2003 action merely triggered the charter provision that relators submit more signatures. Sections 8 and 9, Article XX of the Lakewood Charter. In addition, council's last action occurred on October 6, when it placed the initiative on the March 2, 2004 ballot instead of the November 4, 2003 ballot. Relators filed this action *before* the city council's October 6 action and *only two days after* the city law director rejected their taxpayer demand. The statutory deadlines would have been exceeded no matter how quickly relators acted. See *State ex rel. Ascani v. Stark Cty. Bd. of Elections* (1998), 83 Ohio St.3d 490, 494, 700 N.E.2d 1234. Therefore, relators exercised the required diligence and promptness in bringing this action.

---

Council within thirty (30) days after final action on such proposed ordinance by Council and shall also file with the Clerk a supplemental petition asking that the proposed ordinance be submitted to popular vote signed by that number of qualified electors which when added to the number of electors who signed the original petition provided for in Sections 1 and 5 of this Article will equal fifteen percent (15%) of the total votes cast, for the office of Mayor, at the last preceding regular municipal election at which a Mayor was elected."

Board of Elections

{¶ 11} Respondents further claim that the writ should be denied because the board of elections was not joined. They cite no authority for this proposition, and under Section 10(A), Article XX of the Lakewood Charter, it is *council's* duty to submit the proposed ordinance to a vote of the electors. Any action against the board of elections, which has not had the initiative certified to it for placement on the November 4, 2003 election ballot, would be premature. Cf. *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 474, 764 N.E.2d 971 (where we granted the parties' joint application "to dismiss the board of elections from the case because the action was premature as to the board, which had not had the initiative petition certified to or filed with it"). Accordingly, we proceed to consider the merits of relators' mandamus claim.

Mandamus

{¶ 12} In order to be entitled to the requested writ of mandamus, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the respondents to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Moore v. Malone,* 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 20. Although the proposed initiative ordinance has the effect of a referendum on the ordinance it seeks to repeal, this is permissible under Ohio law. See *State ex rel. Sharpe v. Hitt* (1951), 155 Ohio St. 529, 44 O.O. 489, 99 N.E.2d 659, paragraph three of the syllabus ("The electors of a municipality may by the initiative enact a measure conflicting with or repealing legislation previously passed by the municipal council, so long as the subject matter of such initiative ordinance is within the powers of the municipality to control by legislative procedure.").

{¶ 13} Due to the proximity of the election, relators have established that they lack an adequate remedy in the ordinary course of law. *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake,* 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 21.

Intentional Delay by Council

{¶ 14} For the remaining requirements, relators first contend that respondents' intentional delay in addressing their initiative required the placement of the initiative on the November 4, 2003 election ballot.

{¶ 15} Relators' contention is meritless. Respondents' actions were authorized by the controlling provisions of the Lakewood Charter. In fact, respondents acted more expeditiously than the charter provisions required. See Section 6, Article XX, Lakewood Charter, which requires a council committee to recommend action on a proposed ordinance "not later than the *third regular meeting* of Council following that at which the proposed ordinance was submitted to Council

by the Clerk," and Section 7, Article XX of the Lakewood Charter, which requires the city council to take final action on the ordinance "within *thirty (30) days* " after the committee report. (Emphasis added.)

{¶ 16} Although the charter did not necessarily preclude the clerk of council or council from requesting verification of signatures on relators' supplemental petition *before* council rejected the initiative, they had no *duty* under the charter to do so. See Section 8, Article XX, Lakewood Charter, expressly conditioning initiative petitioners' right to require submission of the proposed ordinance to the electorate upon the council's rejection of the proposed ordinance. The city council did not reject the proposed ordinance until September 15, and the clerk of council forwarded the supplemental petition to the board of elections the very next day.

{¶ 17} Moreover, the cases cited by relators to support this claim are inapposite. These cases involved constitutional charter-amendment provisions, which require the legislative authority of any city to "forthwith" authorize by ordinance an election on the charter issue. Cf. Sections 8 and 9, Article XVIII, Ohio Constitution; *Commt. for Charter Amendment, City Trash Collection*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041; *State ex rel. Commt. for Charter Amendment Petition v. Avon* (1998), 81 Ohio St.3d 590, 693 N.E.2d 205; *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 641 N.E.2d 1075; *State ex rel. Concerned Citizens for More Professional Govt. v. Zanesville City Council* (1994), 70 Ohio St.3d 455, 639 N.E.2d 421; *State ex rel. Citizens for a Better Portsmouth v. Sydnor* (1991), 61 Ohio St.3d 49, 572 N.E.2d 649; *State ex rel. Jurcisin v. Cotner* (1984), 10 Ohio St.3d 171, 10 OBR 503, 462 N.E.2d 381. This case does not involve a charter amendment initiative.

### Receipt of Clerk's Certification by Council

{¶ 18} Relators next contend that the pertinent provisions of the Lakewood Charter require the placement of the proposed ordinance on the November 4, 2003 election ballot because the city council received the clerk's certificates of sufficiency for their original and supplemental initiative petitions when the certificates were delivered to the individual council members before the October 6, 2003 regular meeting.

{¶ 19} In construing these charter provisions, the court applies general laws regarding statutory interpretation, including construing charter language according to its ordinary and common usage. *Commt. for Charter Amendment, City Trash Collection*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 28; Section 3, Article I, Lakewood Charter ("Words and phrases used in this Charter shall, unless the context clearly requires otherwise, be interpreted in the same manner as provided in the Ohio Revised Code relating to the interpretation of the statutes of the State.").

{¶ 20} Moreover, "[i]t is a fundamental rule of statutory construction that statutes relating to the same subject matter should be construed together" and "[i]n construing such statutes *in pari materia*, they should be harmonized so as to give full application to the statutes." *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 294, 649 N.E.2d 1205. Similarly, "[m]unicipal charters must be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible." *Ditmars*, 94 Ohio St.3d at 477, 764 N.E.2d 971.

{¶ 21} Applying these standards, we conclude that relators are not entitled to the requested relief. Under Section 4, Article XX of the Lakewood Charter, the Clerk of Council endorses a certificate of the result of the clerk's examination after the clerk ascertains whether it is signed by the required number of electors. On August 28 and September 18, Hagan endorsed her certificates of the results of the board's determination of the number of valid signatures on relators' original and supplemental petitions and sent the certificates to relators and city council members.

{¶ 22} Relators assert that the time when the individual council members received the clerk's certificates triggered the period in Section 10(A), Article XX of the Lakewood Charter in which city council had to submit the initiative to the electorate. Relators rely on the second sentence in Section 10(A), Article XX of the Lakewood Charter, which provides: "If a primary, regular municipal or general election is to be held not more than six (6) months or less than thirty (30) days *after the receipt of the Clerk's certificate by Council,* such proposed ordinance shall then be submitted to a vote of the electors." (Emphasis added.)

{¶ 23} This sentence, however, must be construed in pari materia with the preceding sentence in Section 10(A), Article XX of the Lakewood Charter, which provides: "When the certificate of the Clerk shows the petition and supplemental petition, if any, to be sufficient, *the Clerk shall certify the fact to Council at its next regular meeting.*" (Emphasis added.) So construing these provisions, the applicable period is after the clerk certifies the sufficiency of the original and supplemental petitions to the city council at its next regular council meeting. Therefore, the clerk's certification controlling the applicable election occurred at the October 6, 2003 regular council meeting and not when individual council members might have received copies of clerk's certificates sent to relators. Relators' contention consequently lacks merit.

## R.C. 1.14

{¶ 24} Relators next contend that city council should have placed the initiative on the November 4, 2003 election ballot because it could have done so at its Monday, October 6, 2003 regular meeting even though the meeting was 29 days before the November 4, 2003 election. Relators claim that under R.C. 1.14, which

applies to the charter provisions through Section 3, Article I of the Lakewood Charter, the city council had a duty to pass an ordinance on Monday, October 6, 2003, to place the initiative on the November 4 election ballot because the last day for doing so (the 30th day before that election) fell on a Sunday, October 5:

{¶ 25} "When a public office in which an act, required by law, is to be performed is closed to the public for the entire day which constitutes the last day for doing the act or before its usual closing time on that day, the act may be performed on the next succeeding day that is not a Sunday or a legal holiday * * *." R.C. 1.14. See, also, Codified Ordinances of Lakewood 101.03(C)(2).

{¶ 26} We have applied R.C. 1.14 to election cases. See *In re Election Contest of Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun. Court* (1999), 87 Ohio St.3d 118, 121, 717 N.E.2d 701; cf. *State ex rel. Ohio Roundtable, Inc. v. Taft* (1996), 76 Ohio St.3d 643, 670 N.E.2d 231 (constitutional time requirement for action challenging ballot language of proposed constitutional amendment precluded the applicability of R.C. 1.14).

{¶ 27} Nevertheless, even assuming that under R.C. 1.14, city council could have placed the initiative on the November 4, 2003 election ballot during the day of October 6, council had no duty under the charter to submit the initiative to the electorate on that ballot. Pursuant to the Lakewood Charter and R.C. 1.14, a timely submission was required to have been made before 4:30 p.m. on Monday, October 6, 2003. But Section 10(A), Article XX of the Lakewood Charter requires that the proposed ordinance be submitted by the city council to the electorate at its next regular meeting. The next regular council meeting was October 6 at *7:30 p.m.*, i.e., after the time when, according to the uncontroverted affidavit of the Elections Coordinator of the Cuyahoga County Board of Elections, council could have timely placed the initiative on the November 4, 2003 election ballot. See Lakewood Codified Ordinances 121.03(b) ("Except as otherwise provided by Charter, regular meetings of Council shall be held on the first and third Mondays of each month at 7:30 p.m., official time * * * .").

{¶ 28} Consequently, the November 4, 2003 election was not the next primary, regular municipal, or general election to be held not more than six months or less than 30 days after the receipt of the clerk's certification by council on October 6. Instead, even if, as relators assert, the March 2, 2004 primary election was not the "next primary, regular municipal or general election" as defined in the charter to be held in that time period, the city council was still authorized under Section 10(A), Article XX of the Lakewood Charter to place the initiative on the March 2, 2004 primary election ballot. See Section 10(A), Article XX, Lakewood Charter ("If no such election is to be held within that time, Council may provide for submitting the proposed ordinance to the electors at a special election."); cf.

Sections 1 and 2, Article XIX, Lakewood Charter, defining regular, special, and primary municipal elections for purposes of the charter.

{¶ 29} Therefore, the city council neither abused its discretion nor clearly disregarded applicable law in placing the initiative on the March 2, 2004 primary election ballot.

### Liberal Construction; Policy

{¶ 30} Relators correctly note that courts liberally construe municipal initiative and referendum powers so as to permit rather than preclude the exercise of these powers by the people. *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 230–231, 736 N.E.2d 886. "Nevertheless, the settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *Ditmars*, 94 Ohio St.3d at 476, 764 N.E.2d 971; *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 539, 757 N.E.2d 319. The city council and its clerk strictly complied with the pertinent charter and other applicable legal requirements concerning relators' initiative petition.

{¶ 31} Moreover, this construction of the controlling provisions does not prevent the submission of relators' initiative to the electorate. In fact, because the issue is on the March 2, 2004 primary election ballot, absentee voters will have an unfettered opportunity to vote on the issue, whereas if we were to grant the writ to order the placement of the issue on the November 4, 2003 general election ballot at this late date, some absentee voters will have already voted without the issue on their ballots. Further, because the city council placed the issue on a primary election ballot, there will presumably be no special election costs associated with its actions.

### Conclusion

{¶ 32} Based on the foregoing, relators have failed to establish their entitlement to the requested writ. Accordingly, we deny the writ of mandamus.

Writ denied.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

F.E. SWEENEY, J., not participating.

———

Phillips & Co., L.P.A., and Gerald W. Phillips, for relators.

Kevin Spellacy, Lakewood Law Director, and Michael P. Butler, for respondents.