[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Harris v. Rubino,* Slip Opinion No. 2018-Ohio-3609.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3609

THE STATE EX REL. HARRIS ET AL. *v.* RUBINO, FIN. DIR., ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Harris v. Rubino,* Slip Opinion No. 2018-Ohio-3609.]

*Mandamus—Writ of mandamus sought to compel city finance director or city council and county board of elections to place zoning ordinance proposed by initiative petition on the November 2018 ballot—City charter does not clearly and expressly conflict with the requirements of R.C. 731.28—City council did not have a clear legal duty to submit the proposal to the board of elections—City finance director ordered to certify the sufficiency and validity of the initiative petition for placement on the November 2018 ballot—Costs and attorney fees awarded—Writ granted in part and denied in part.*

(No. 2018-1129—Submitted August 30, 2018—Decided September 7, 2018.)

IN MANDAMUS.

_____

**Per Curiam.**

## I. INTRODUCTION

{¶ 1} This expedited elections case involves an initiative petition proposing an ordinance that would amend the city of Solon's zoning map to create the Kerem Lake Mixed-Use District. Relators, Mark A. Harris, Richard N. Haig, Jacqueline L. Kogan, Cheryl L. Davis, and Travis Lane Maggard, are the five members of the petition committee. The committee seeks a writ of mandamus (1) ordering respondent Solon Director of Finance Matt Rubino (or in the alternative, respondent Solon city council) to certify the sufficiency and validity of the initiative petition to respondent Cuyahoga County Board of Elections and (2) ordering the board to place the proposed ordinance on the November 6, 2018 ballot. The committee asserts these claims as a taxpayer action under R.C. 733.59 and seeks costs and reasonable attorney fees under R.C. 733.61. With its complaint, the committee filed a motion to establish the amount of security for the costs of the proceeding under R.C. 733.59.

{¶ 2} We grant a writ of mandamus ordering Rubino to certify the sufficiency and validity of the initiative petition to the board of elections for placement on the November 2018 ballot. We also grant the motion to establish the amount of the security for costs, waive the provision requiring relators to pay security for costs, and grant the committee its costs and reasonable attorney fees.

## II. FACTS

### A. The Petition

{¶ 3} The initiative petition seeks to submit to the voters of Solon a proposed ordinance amending the city's zoning map to create the Kerem Lake Mixed-Use District. The ordinance would change the zoning classification of a 102-acre tract that includes a 20-acre lake. The area is currently zoned for single-family houses on one-acre lots. If created, the mixed-use district would permit development of the property to include single- and multi-family dwellings, a

winery, a spa, a boutique hotel, certain retail uses, a senior-living facility, and an underground parking garage.

{¶ 4} On June 29, 2018, prior to circulating the petition, the committee submitted a certified copy of the proposed ordinance to both Rubino and the city council. The committee filed the circulated petition with Rubino on July 12. R.C. 731.28 provides that when a municipal initiative petition is filed with a city auditor,[1] the auditor shall "after ten days, * * * transmit the petition to the board [of elections]," which shall return it to the auditor within ten days after receiving it, along with a statement attesting to the number of electors who signed the petition. The board then submits the petition to the electors "at the next general election occurring subsequent to ninety days after the auditor * * * certifies the sufficiency and validity of the initiative petition to the board of elections." *Id*.

{¶ 5} Rubino held the petition for ten days in accordance with R.C. 731.28. On July 23, the petition was forwarded to the board of elections to examine the signatures. On July 30, the board certified that the petition contained 870 valid signatures, which the parties agree is more than the number necessary to qualify the petition for the ballot under R.C. 731.28. On July 31, the city retrieved the petition and certification from the board. The deadline to certify the validity and sufficiency of the petition to the board for inclusion on the November 2018 ballot was August 8 at 4 p.m.

{¶ 6} Neither Rubino nor the city council met this deadline. Article XIV of the Solon City Charter provides that an ordinance proposed by initiative petition changing a zoning classification or permitted use "shall not become effective after the passage thereof, until Council submits such ordinance * * * to the electorate at

---

[1] The parties agree that as director of finance, Rubino performs the duties of a city auditor and therefore is the official referred to in R.C. 731.28. *Accord State ex rel. Donahue v. Bellbrook*, 44 Ohio St.2d 36, 37-38, 336 N.E.2d 635 (1975) ("In the absence of an official specifically designated * * * city auditor, a referendum petition must be filed with the official who in fact performs the duties of * * * auditor").

a regularly scheduled election, occurring more than 90 days after the passage of the ordinance * * * and such ordinance * * * is approved by a majority of the electors voting thereon, in this Municipality and in each ward in which the change is applicable to property in the ward."

{¶ 7} Rubino and the city council took the position that under Article XIV of the charter, the city council—not Rubino—had the duty to certify the petition to the board, that it could do so only by passing an ordinance, and that the charter required that the ordinance be read by title at three separate council meetings. The city council prepared an ordinance for this purpose containing "emergency" language. That language, if adopted, would have waived the three-reading requirement and made the ordinance effective immediately on passage. The city council held a regular meeting on August 6, at which the ordinance was read by title for the first time. The council did not adopt the "emergency" language or pass the ordinance.

### B. The Taxpayer Demand

{¶ 8} During the city council's July 2 meeting—prior to the committee's filing of the circulated petition—the councilman for the ward that includes the Kerem Lake project stated his desire that the eventual ordinance certifying the validity and sufficiency of the petition to the board be given three readings. On July 20, the committee's counsel sent a taxpayer-demand letter to the city's law director, arguing that three readings of a certification ordinance by the city council were not necessary and that Rubino, or in the alternative, the council, had a duty to certify the validity and sufficiency of the petition to the board by August 8. The committee requested, under R.C. 733.58 and 733.59, that the law director seek a writ of mandamus compelling the city council to certify the petition to the board if the council did not do so at its August 6 regular meeting. On July 30, the law director rejected this demand. The August 8 deadline passed with no action by the law director. On August 9, the committee filed this mandamus action.

4

### III. ANALYSIS

{¶ 9} To resolve this case, we must determine whether R.C. 731.28 or Article XIV of the Solon City Charter governs the procedure for certifying the initiative petition to the board of elections for placement on the ballot. The committee argues that R.C. 731.28 applies because the charter provision does not provide a procedure under which the city council must certify the petition by ordinance and because the charter provision violates the Ohio Constitution's reservation of the right of initiative to the people of each municipality in Article II, Section 1f. In the alternative, the committee argues that if the charter does apply, the city council cannot delay the certification of the initiative petition by insisting on passing an ordinance after three readings at three separate meetings; instead, it must either pass an emergency ordinance or certify the petition by resolution or motion.

{¶ 10} We conclude that the charter provision does not apply and that R.C. 731.28 imposed a duty on Rubino to certify the initiative petition to the board. Accordingly, we do not reach the remaining substantive arguments regarding the constitutionality of the charter and the city council's duties under it.

### A. Mandamus Standard

{¶ 11} To be entitled to a writ of mandamus, the committee must establish a clear legal right to the requested relief, a clear legal duty on the part of a respondent to grant such relief, and the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Commt. for Charter Amendment Petition v. Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 17. Mandamus is appropriate to correct a public official's or public body's abuse of discretion. *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 27.

### B. Does the Charter Clearly and Expressly Conflict with R.C. 731.28?

{¶ 12} The key question in determining the legal rights and duties of the parties in this case is whether R.C. 731.28 or Article XIV of the city charter provides the applicable procedure for certifying the sufficiency and validity of the initiative petition to the board of elections. The committee argues that the official performing the role of a city auditor must certify the petition to the board under R.C. 731.28. The city argues that the charter applies and that it requires city council to pass an ordinance certifying the petition to the board. To resolve this question, we must determine whether the charter clearly and expressly conflicts with the statute. As explained below, we find that it does not conflict and that the statute therefore applies.

#### 1. Applicable Law

{¶ 13} Article II, Section 1f of the Ohio Constitution provides, "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law." R.C. 731.28 sets forth the manner in which municipal initiative petitions are to be submitted, verified, and certified to the board of elections for placement on the ballot. It states:

> Ordinances and other measures providing for the exercise of any powers of government granted by the constitution or delegated to any municipal corporation by the general assembly may be proposed by initiative petition. Such initiative petition must contain the signatures of not less than ten per cent of the number of electors who voted for governor at the most recent general election for the office of governor in the municipal corporation.

When a petition is *filed with the city auditor* or village clerk, signed by the required number of electors proposing an ordinance or other measure, such auditor or clerk *shall, after ten days*, transmit a certified copy of the text of the proposed ordinance or measure to the board of elections. The auditor or clerk shall *transmit the petition to the board* together with the certified copy of the proposed ordinance or other measure. The board shall examine all signatures on the petition to determine the number of electors of the municipal corporation who signed the petition. The board *shall return the petition to the auditor or clerk within ten days after receiving it*, together with a statement attesting to the number of such electors who signed the petition.

The board shall submit such proposed ordinance or measure for the approval or rejection of the electors of the municipal corporation at the next general election occurring subsequent to ninety days *after the auditor or clerk certifies the sufficiency and validity of the initiative petition to the board of elections*. No ordinance or other measure proposed by initiative petition and approved by a majority of the electors voting upon the measure in such municipal corporation shall be subject to the veto of the mayor.

(Emphasis added.) R.C. 731.28.

{¶ 14} The statute thus sets out the following procedure: (1) petitioners submit the municipal initiative petition to the city auditor, (2) the auditor holds the petition for 10 days, (3) the auditor transmits the petition to the board of elections to determine the number of valid signatures, (4) the board certifies the number of valid signatures and returns the petition to the auditor, (5) the auditor certifies to the board the validity and sufficiency of the petition, and (6) the board submits the

petition to the electors at the next election occurring 90 days after the auditor's certification.

**{¶ 15}** Municipalities, however, have "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Constitution, Article XVIII, Section 3. And "[a]ny municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Ohio Constitution, Article XVIII, Section 7. "The municipal charter is basically the constitution of the municipality." *Fuldauer v. Cleveland*, 32 Ohio St.2d 114, 118, 290 N.E.2d 546 (1972).

**{¶ 16}** R.C. 731.41 provides that R.C. 731.28 does not apply "to any municipal corporation which adopts its own charter containing an initiative and referendum provision for its own ordinances and other legislative measures." But this court has explained that "[t]he statutory procedure governing municipal initiative and referendum in R.C. 731.28 through 731.41" *does* apply to "municipalities where the charter incorporates general law by reference, except where the statutory procedure conflicts with other charter provisions." *State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 477, 764 N.E.2d 971 (2002).

**{¶ 17}** As this court has also stated, "[a]lthough the Constitution gives municipalities the authority to adopt home rule, local self-government, the exercise of those powers by the adoption of a charter should *clearly and expressly* state the areas where the municipality intends to supersede and override general state statutes." (Emphasis added.) *State ex rel. Bardo v. Lyndhurst*, 37 Ohio St.3d 106, 110, 524 N.E.2d 447 (1988). A municipal charter provision will therefore prevail over a parallel state statute "only where the conflict appears by the express terms of the charter and not by mere inference." *Id.* at 109; *accord Ditmars* at 475.

{¶ 18} "Municipal charters must be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible." *Ditmars* at 477. For example, in *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1, 215 N.E.2d 592 (1966), the charter incorporated general law by reference and "provide[d] for certain features of the initiative and referendum differing from the statutory provisions with relation thereto" but was "silent with respect to language to be contained on a referendum petition [and] with respect to filing such petition with a village official prior to its circulation." *Id.* at paragraph five of the syllabus. This court held that those matters were controlled by R.C. 731.32 and 731.33 and that R.C. 731.41 was inapplicable. *Id.*

{¶ 19} Finally, when construing city charters, we apply general rules of statutory interpretation. *State ex rel. Beard v. Hardin*, ___ Ohio St.3d ___, 2018-Ohio-1286, __ N.E.3d ___, ¶ 27. However, referring to the Ohio Constitution's reservation to the people of the right of municipal initiative, we have admonished that " 'provisions for municipal initiative or referendum should be liberally construed in favor of the power reserved so as to permit rather than preclude the exercise of such power, and the object clearly sought to be attained should be promoted rather than prevented or obstructed.' " *State ex rel. King v. Portsmouth*, 27 Ohio St.3d 1, 4, 497 N.E.2d 1126 (1986), quoting *State ex rel. Sharpe v. Hitt*, 155 Ohio St. 529, 535, 99 N.E.2d 659 (1951).

*2. Solon's Charter*

{¶ 20} Solon's charter states that ordinances may be proposed by initiative "in the manner now or hereafter provided by the Constitution or the laws of Ohio." Solon City Charter, Article IX, Section 1(d). This provision was amended in 1988 to create an exception for initiative proposals that would change a zoning district or zoning use. According to the amendment, those proposals "shall be governed by Article XIV" of the charter. *Id.*

{¶ 21} Article XIV of the charter contains two sections: one relating to zoning-district changes and one relating to zoning-use changes. Prior to 1988, those provisions required the city council to submit to city electors any change in zoning classification or permitted use that was *initiated and passed by the city council*. In other words, they were automatic-referendum provisions. The 1988 amendments added to these sections language regarding ordinances proposed by initiative petition. Article XIV, Section 1 now reads:

> Any ordinance, resolution or other action, whether legislative or proposed by initiative petition, effecting a change in the zoning classification or district of any property within the City of Solon, Ohio, shall not become effective after the passage thereof, until Council submits such ordinance, resolution or other action to the electorate at a regularly scheduled election, occurring more than 90 days after the passage of the ordinance, resolution or other action and such ordinance, resolution or other action is approved by a majority of the electors voting thereon, in this Municipality and in each ward in which the change is applicable to property in the ward.

Article XIV, Section 2 is identical to Section 1 except that it replaces the words "effecting a change in the zoning classification or district of any property within the City of Solon" with the words "effecting a change in the uses permitted in a zoning use classification or district of the City of Solon."

*3. No Clear and Express Conflict*

{¶ 22} These provisions of the Solon city charter do not clearly and expressly conflict with R.C. 731.28. The charter provisions do not set forth a procedure for submitting a zoning initiative petition to the city or for verifying the petition's signatures. The city acknowledges that it followed R.C. 731.28's

10

requirements with respect to those processes: it held the petition for ten days, then submitted it to the board of elections for verification of the signatures.

{¶ 23} Likewise, the provisions in Article XIV of the charter do not set forth a procedure for certifying the petition to the board of elections for placement on the ballot. Sections 1 and 2 say, "Any ordinance * * * *proposed by initiative petition, effecting a change* in the [zoning classification or uses permitted] * * * shall not become effective after the *passage thereof*, until Council submits *such ordinance* * * * to the electorate at a regularly scheduled election, occurring more than 90 days after the *passage of the ordinance * * *.*" (Emphasis added.)

{¶ 24} These provisions make no mention of an ordinance (or any other action by the city council) *certifying an initiative petition to the board of elections* (a "certification ordinance"). Rather, they refer to any ordinance that changes zoning or a permitted use, whether it is one enacted by the legislative body—city council—or it is one *proposed by initiative petition*, that is, an ordinance that would be enacted if the voters approve it in the election (the "proposed ordinance"). The phrases "passage thereof" and "Council submits such ordinance" grammatically refer to the *ordinance effecting a change in the zoning classification or the uses permitted*, i.e., in the initiative context, the *proposed* ordinance, not a separate, otherwise unmentioned *certification* ordinance.

{¶ 25} Although it is not clear whether the term "passage" means passage by the city council or passage by the voters in an election, neither interpretation of the term creates a requirement that the city council certify an initiative petition to the board of elections—in fact, neither interpretation makes sense in the context of initiatives. The city council does not *pass* an ordinance *proposed by initiative petition, effecting a change in zoning or permitted use*, so "passage thereof" cannot refer to passage by the city council in regard to an initiative petition. If "passage thereof" refers to passage by the voters, the submission of "such ordinance" to the electors after "passage thereof" would, as the committee argues and the city denies,

subject each initiative to two votes by the electorate. Either way, the provisions simply do not address a *certification* ordinance.

{¶ 26} Conspicuously, the city's brief does not explain how the words of the Article XIV provisions support its position. Rather, it sets out the full text of the provisions and then shifts immediately to a discussion of its practice since the 1988 charter amendments. But the city cites no authority stating that its past practice is entitled to deference. And such deference would be particularly unwarranted here because the right to initiative belongs to the people, not to the municipality as an entity. *See* Article II, Section 1f, Ohio Constitution.

{¶ 27} To conclude that Article XIV of the charter provides that the city council is to certify initiative petitions to the board of elections would require us to add to or delete words from the charter in order to turn references to a proposed ordinance into references to a certification ordinance or to ignore the reference to "after the passage thereof" with respect to an ordinance proposed by initiative petition. This would be contrary to the principles of statutory construction. "A court construing a provision in a city charter, statute, contract or other writing may not ignore the existence of any word or phrase." *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988).

{¶ 28} We must likewise avoid reaching a conclusion premised on an inference of the provisions' possible intent rather than on the express terms of the charter. *See Bardo*, 37 Ohio St.3d at 109, 524 N.E.2d 447. The terms of the charter reflect the somewhat inartful insertion of a clause regarding initiative petitions into what had been solely automatic-referendum provisions. The resulting provisions do not clearly and expressly conflict with R.C. 731.28's requirement that the city auditor exercise his limited, discretionary authority to certify the validity and sufficiency of the initiative petition to the board of elections, *see State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 231, 685 N.E.2d 754 (1997).

{¶ 29} Accordingly, we hold that Rubino abused his discretion by failing to certify the sufficiency and validity of the petition to the board of elections by the August 8 deadline. *Accord id*. at 232; *Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, at ¶ 39. Because of the proximity of the election, the committee has no adequate remedy at law. We therefore grant a writ ordering Rubino to certify the sufficiency and validity of the initiative petition to the board for placement on the November 2018 ballot.

*4. Constitutional Claims*

{¶ 30} We do not reach the committee's arguments that Article XIV of the Solon City Charter violates Article II, Section 1f of the Ohio Constitution. "[C]ourts decide constitutional issues only when absolutely necessary." *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 54. Because we hold inapplicable the charter provisions that the city claims govern the procedure for certifying a zoning initiative petition to the board, determining the constitutionality of those provisions is unnecessary.

{¶ 31} Moreover, we have no jurisdiction over the committee's challenges to two other aspects of the Article XIV charter provisions: (1) the "ward veto" provision, under which a zoning initiative will fail if not approved by a majority of electors in the ward in which the subject property is located, and (2) the purported "two vote" requirement, i.e., the committee's assertion that the charter requires an initiative to undergo two separate votes (an interpretation that the city rejects). This court lacks jurisdiction over a mandamus claim if the true object of the claim is a declaratory judgment and a prohibitory injunction. *State ex rel. Gadell-Newton v. Husted*, 153 Ohio St.3d 225, 2018-Ohio-1854, 103 N.E.3d 809, ¶ 9. To remedy the committee's constitutional challenges to the ward veto and two-vote provisions would require not the relief the committee seeks here—a writ ordering the initiative petition certified to the board of elections—but a declaration that Article XIV is

unconstitutional and an order prohibiting the city from enforcing the challenged provisions. We cannot grant that relief in this action.

### C. Should the Committee Receive Its Costs and Reasonable Attorney Fees Under R.C. 733.61?

{¶ 32} R.C. 733.58 provides that if "an officer or board of a municipal corporation fails to perform any duty expressly enjoined by law or ordinance," the city law director shall seek a writ of mandamus compelling the duty's performance. If a taxpayer of the municipal corporation asks the law director, in writing, to file such an action and the law director refuses, the taxpayer "may institute suit in his own name, on behalf of the municipal corporation." R.C. 733.59. If a court hearing such a taxpayer lawsuit "is satisfied that the taxpayer had good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity of the case demands. In such case the taxpayer shall be allowed his costs, and, if judgment is finally ordered in his favor, he may be allowed, as part of the costs, a reasonable compensation for his attorney." R.C. 733.61. No taxpayer lawsuit "shall be entertained by any court until the taxpayer gives security for the cost of the proceeding." R.C. 733.59.

{¶ 33} With its complaint, the committee filed a motion to establish the amount of security for costs, asking the court to determine whether a security beyond its $100 e-filing fee and $100 e-filing deposit is required.

{¶ 34} In *Maple Hts.*, this court considered a similar motion and explained that while security for costs is a "*jurisdictional* prerequisite to a statutory taxpayer action," the court has "rejected the argument that security must be provided at the time the suit is initially filed and held instead that a court may later transform a common-law taxpayer action into a statutory one through a waiver of security." (Emphasis sic.) 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, at ¶ 26. In that case, the court granted a writ ordering the Maple Heights city council to immediately approve an ordinance placing a charter amendment on the ballot,

14

granted the motion to establish the amount of security, waived the requirement that relators provide security for costs, and found that the relators were entitled to recover reasonable attorney fees. *Id.* at ¶ 27-28. As in *Maple Hts.*, we find that an award of costs and reasonable attorney fees is appropriate under R.C. 733.61.

## IV. CONCLUSION

**{¶ 35}** In light of the foregoing, we issue a writ of mandamus ordering the Solon director of finance to certify the sufficiency and validity of the initiative petition to the Cuyahoga County Board of Elections for placement on the November 2018 general-election ballot. We deny the writ as to the remaining respondents.

**{¶ 36}** We grant the motion to establish security for costs and waive the provision of security for costs. We grant the committee its costs and reasonable attorney fees; attorney fees will be determined upon review of the committee's filing of an itemized application and independent evidence supporting the reasonableness of the hourly rates charged and the hours billed. The application should not include attorney's fees for pages 21 through 28 of relators' reply brief, which were stricken.

Writ granted in part

and denied in part,

and motion granted.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, and DEGENARO, JJ., concur.

FISCHER, J., concurs but would deny the committee's request for attorney fees.

DEWINE, J., dissents, with an opinion.

_____

**DEWINE, J., dissenting.**

{¶ 37} I dissent. The Ohio Constitution grants municipalities the authority to "exercise all powers of local self-government." Ohio Constitution, Article XVIII, Section 3. The citizens of the city of Solon exercised this constitutional home-rule power and enacted a charter provision that controls the process for making zoning changes through initiative petition. Yet today, the majority disregards the home-rule rights of Solon and its citizens and insists that state law, rather than the city charter, controls its local zoning initiatives.

{¶ 38} Solon's charter provides that most initiative petitions are to be governed by state law but makes an explicit exception to state-law procedures for zoning matters—specifically, it states, "except that ordinances or resolutions proposed by initiative petition to affect [sic] a zoning district change or zoning use change shall be governed by Article XIV of this Charter." Solon Charter, Article IX, Section 1(d). This provision is a clear and unequivocal statement of the city's intention to exercise its home-rule power to regulate the initiative process for zoning changes. (Indeed, it is hard to imagine how the city could have expressed its intention any more clearly.) Thus, I would conclude that the city's charter governs the manner in which a relator's initiative petition is advanced to the ballot. And I would further hold that Solon City Council did not violate a clear legal duty in failing to pass the initiative ordinance in time for its placement on the November 2018 ballot.

**The City Exercises its Home-Rule Authority over the Initiative Process**

{¶ 39} Under the Ohio Constitution's home-rule provisions, municipalities are authorized "to exercise all powers of local self-government." Ohio Constitution, Article XVIII, Section 3; *see also id*., Section 7. We have long held that matters of municipal elections fall squarely within the powers of local self-government. *See Fitzgerald v. Cleveland*, 88 Ohio St. 338, 344, 103 N.E. 512 (1913); *Reutener v. Cleveland*, 107 Ohio St. 117, 141 N.E. 27 (1923). This

16

principle is reflected in R.C. 731.41, which provides that the initiative procedures set forth in R.C. 731.28 to 731.41 "do not apply to any municipal corporation which adopts its own charter containing an initiative and referendum provision for its own ordinances and other legislative matters."

{¶ 40} Solon, for the most part, has acceded to following the initiative procedures provided in R.C. 731.28 et seq. Solon Charter, Article IX, Section 1(d). But it has explicitly provided that local procedures rather than state law shall apply to zoning initiatives: "Ordinances and other measures may be proposed by initiative petition and adopted by election, in the manner now or hereafter provided by the Constitution or the law of Ohio, *except* that ordinances or resolutions proposed by initiative petition to affect [sic] a zoning district change or zoning use change shall be governed by Article XIV of this Charter." (Emphasis added.) Solon City Charter, Article IX, Section 1(d).

{¶ 41} Despite the Solon charter's express directive that its own Article XIV—not state law—applies, the majority undertakes a protracted analysis about whether the charter provision "clearly and expressly conflict[s] with R.C. 731.28." Majority opinion at ¶ 22. Oddly, in reaching its conclusion that the charter doesn't conflict with the statute, the majority focuses on ways the procedures in Article XIV of the charter are not like those set forth in the statute. Thus, the majority points out that the charter provisions "do not set forth a procedure for submitting a zoning initiative petition to the city or for verifying the petition's signatures." *Id*. at ¶ 22. And the charter "do[es] not set forth a procedure for certifying the petition to the board of elections for placement on the ballot." *Id*. at ¶ 23. But neither of those points demonstrates a lack of conflict with the statute. Indeed, both points emphasize the differences between the statute and the charter.

{¶ 42} It appears that the majority would find that the statutes and charter conflict—and allow the city to exercise its home rule powers—only if the charter outlined a process that differed item by item with the process set forth in the

statutes, for example, if the charter stated that the language required in R.C. 731.33 be printed in purple ink rather than in red. But the home-rule sections of the Constitution give municipalities "the broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature of interest." *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212, 80 N.E.2d 769 (1948). Nowhere is there a requirement that a charter's own initiative process track the procedures prescribed by statute.

**{¶ 43}** Indeed, the majority's position doesn't really contradict Solon's claim that the city's charter has clearly provided for another process for zoning ordinances proposed by initiative petitions. Instead, the gist of the argument is that Solon's charter doesn't do it as well as R.C. 731.28 through 731.41. Thus, the majority focuses on the charter's use of the word "passage" and its "somewhat inartful insertion of a clause regarding initiative petitions into what had been solely automatic-referendum provisions." Majority opinion at ¶ 28. But it is not the court's role to evaluate how well a charter provision is drafted:

> A municipality automatically has the form of government prescribed by the statutes of the state unless its citizens voluntarily adopt a charter pursuant to the constitutional provision, and where a majority of the sovereign voters do adopt such a charter it is not for the courts to question the wisdom or desirability of the provisions of such charter in respect to purely local affairs.

*Hackley* at 218. *See also Buckeye Community Hope Found. v. Cuyahoga Falls*, 81 Ohio St.3d 559, 564, 692 N.E.2d 997 (1998) ("The constitution does not dictate how municipalities may incorporate a referendum provision into their governing mechanism; nor does it place restrictions upon the nature of the referendum

provisions municipalities may employ"). Here, Solon has clearly provided its own procedure for initiated zoning ordinances.

{¶ 44} Because the city has adopted "its own charter containing an initiative and referendum provision for its own ordinances and other legislative matters," R.C. 731.41, the statutory provisions in R.C. 731.28 et seq. do not apply. Matt Rubino, Solon's finance director, was under no legal duty to certify the petition in accordance with R.C. 731.28. I would deny the writ of mandamus as to Rubino.

## The City Had No Clear Legal Duty to Advance the Initiative Ordinance in Time to Be Placed on the November Ballot

{¶ 45} The committee argues in the alternative that if the city's charter governs the initiative process, the city had a legal duty to take action so that the initiative ordinance would appear on the November 2018 ballot. The committee suggests that the city council delayed action due to animus toward the proposed ordinance and argues that in the time since the initiative petition was filed with the city on July 12, 2018, the city could have (1) provided for three readings of the ordinance as required by Article IV, Section 5(c) of the Solon City Charter, (2) passed an emergency ordinance to submit the petition to voters, or (3) acted by motion to submit the petition to voters. Notably, the committee doesn't allege that the city failed to follow its charter. Instead, the committee maintains that the city could have acted differently to meet the deadline to place the initiative on the November 2018 ballot.

{¶ 46} In *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146-02, West End Blight Designation v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, we considered a petition for a writ of mandamus that claimed in part that the Lakewood city council had intentionally delayed action on a proposed initiative to avoid placing it on the November 2003 ballot. We concluded that the relators' claim had no merit. The council could have

acted more quickly on the initiative, but it was under no duty to do so.  The city council's actions were authorized by the Lakewood charter.

{¶ 47} Likewise, the Solon city council's actions here were authorized by its charter.  Under Article XIV, Section 1, council needed to pass the initiated ordinance at least 90 days before it could be submitted to voters for approval.  For the November 2018 ballot, that meant the ordinance had to be passed by August 8.  The charter further provides that

> each ordinance * * * shall before its passage, be read by title only on three separate days unless the requirement for such reading be dispensed with by the concurrence of at least five Councilmen; provided, however, that any emergency measure may be passed after one reading and the legislative authority may require any reading to be in full by a majority vote of its members.

Solon City Charter, Article IV, Section 5(c).

{¶ 48} After the Cuyahoga County Board of Elections certified the number of valid signatures on the petition (870), the city retrieved the petition and certification on July 31.  The petition was then read by title for the first time at the council's next regular meeting on August 6.  According to respondents, the council generally held meetings on the first and third Mondays of each month.  If the city council held to this schedule, the next regular meeting during which the initiative could have been read was August 20, less than 90 days before the November 2018 general election.  The procedures followed by the council were in accordance with the charter.

{¶ 49} The committee cites cases in which we determined that municipal officers had to take immediate action to submit initiatives to voters if time was limited.  *See State ex rel. Commt. for Charter Amendment Petition v. Avon*, 81 Ohio

St.3d 590, 595, 693 N.E.2d 205 (1998); *State ex rel. Commt. For Charter Amendment Petition to Limit the use of Photo-Monitoring Devices in Maple Hts. v. Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 22. But as we explained in *Lakewood*, those cases, which involved charter-amendment provisions, differ from cases involving initiative petitions, because in charter-amendment cases, municipalities are required "to 'forthwith' authorize by ordinance on the charter issue." *Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 361, at ¶ 17, quoting Ohio Constitution, Article XVIII, Sections 8 and 9. No such constitutional requirement exists for initiated zoning ordinances.

{¶ 50} Importantly, the question is not whether the committee's initiative petition will go on the ballot, but when. As the city acknowledges, "[t]he real issue is whether the petition will be submitted for November, 2018 or May, 2019 election." I would conclude that the city of Solon was under no clear legal duty to meet the committee's timeline for placing the initiative on the November 2018 ballot. I therefore would deny the writ of mandamus as to the city. Further, because the committee's claims were not well founded, I would deny costs and attorney fees under R.C. 733.61.

_____

Berns, Ockner & Greenberger, L.L.C., Jordan Berns, and Majeed G. Makhlouf; and McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for relators.

Thomas G. Lobe Co., L.P.A., and Thomas G. Lobe; Lon D. Stolarsky; and Todd D. Cipollo Co., L.P.A., and Todd D. Cipollo, for respondents Matt Rubino, Solon City Council, and city of Solon.

_____