[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 100.]

THE STATE EX REL. COMMITTEE FOR THE CHARTER AMENDMENT, CITY TRASH COLLECTION, ET AL. *v.* CITY OF WESTLAKE ET AL.

[Cite as *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 2002-Ohio-5302.]

*Municipal corporations—Ordinance passed privatizing city of Westlake's trash collection services—Elections—Mandamus sought to compel city et al. to submit petition proposing amendment to city charter to use only public service employees for trash collection services to the Cuyahoga County Board of Elections and to have the proposed charter amendment placed on the November 5, 2002 general election ballot—Writ granted—Request for attorney fees granted.*

(No. 2002-1552—Submitted September 27, 2002—Decided October 3, 2002.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶1} On July 2, 2002, respondent Council of the city of Westlake, Ohio, passed Ordinance No. 2002-69, which privatized the city's trash collection services. The ordinance was passed as emergency legislation and was not subject to referendum.

{¶2} Relators, Committee for the Charter Amendment, City Trash Collection, and its individual members, circulated a petition proposing an amendment to the Westlake Charter. The amendment would require the Westlake Director of Public Service to use only public service employees "for the curbside collection of solid wastes, yard wastes, and recyclables from the residential household units of the City."

**{¶3}** On August 6, 2002, the committee filed the petition with respondent Westlake Clerk of Council Susan J. Prehoda. The petition consisted of 23 part-petitions containing 814 signatures. On August 9, 2002, Prehoda notified the committee members that the petition was insufficient because "a minimum number of 1,637 valid signatures of qualified electors of the City are required to begin the Charter amendment process." Prehoda further advised the committee members that they could withdraw the petition, continue circulating it, and subsequently refile it.

**{¶4}** On August 19, 2002, the committee requested that Prehoda explain the supposed requirement of 1,637 valid signatures mentioned in her August 9 letter. On August 21, 2002, Prehoda informed the committee that the signature requirement represented ten percent of the 16,436 total votes[1] cast at the November 2000 general election, which she claimed was the "last regular municipal election at which a Charter amendment was voted upon." On that same date, Westlake Law Director David R. Harbarger advised the committee that the petition did not contain sufficient signatures and that the proposed charter amendment, if enacted, would be unconstitutional.

**{¶5}** Based in part upon Prehoda's and Harbarger's responses, the committee withdrew the petition on August 28, 2002. The withdrawal of the petition was also based upon the board of elections' having given the petitioners petition forms that contained an outdated election falsification statement.

**{¶6}** On September 3, 2002, the committee filed a second petition concerning the proposed charter amendment. The petition was composed of 34 part-petitions containing 840 signatures. Fifteen of the 34 part-petitions were unaltered part-petitions that had been withdrawn on August 28.[2] Also on

---

1. A minimum of ten percent of 16,436 signatures would actually require 1,644 signatures, not 1,637.
2. "Neither R.C. 3501.38(I) nor (K) prohibits the withdrawal of previously filed petitions and the submission of either new petitions or the resubmission of combined but unaltered petitions before the filing deadline." *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229,

September 3, 2002, the committee's attorney filed memoranda with Prehoda and Harbarger specifying reasons why the city's reliance on the number of voters at the November 2000 general election was incorrect and why the November 2001 election was the appropriate election to determine the sufficiency of the petition. The committee demanded that Prehoda and the Westlake City Council immediately submit the proposed charter amendment to Westlake electors at the November 5, 2002 general election and if they failed to do so, that Harbarger take the necessary legal action to compel Prehoda and the city council to place the issue on the November 5, 2002 election ballot.

{¶7} Upon receiving the petition and after consulting with Harbarger, Prehoda submitted the petition to the Cuyahoga County Board of Elections to verify the number of valid signatures on the petition. On September 5, 2002, the board informed Prehoda that the petition contained 735 valid signatures.

{¶8} At the time she received the board's determination on September 5, Prehoda had already prepared the docket and agenda for that day's council meeting. Harbarger prepared an ordinance directing the submission of the proposed charter amendment to the electorate so that it would be available if the city council decided to add it to the agenda at the September 5 meeting.

{¶9} At the September 5, 2002 council meeting, a motion to add the ordinance for the proposed charter amendment to the agenda was defeated. In their discussion, council members expressed their desire to "protect" and "defend" the charter and disappointment that the petition contained insufficient signatures. The law director had advised council that since the petition required ten percent of the votes cast at either the November 2000 election or the November 1995 election, i.e., the last elections at which charter amendments were on the ballot, the petition contained insufficient signatures. The ordinance, in revised form, was then

---

736 N.E.2d 886, syllabus; see, also, *State ex rel. Miles v. McSweeney*, 96 Ohio St.3d 352, 2002-Ohio-4455, 775 N.E.2d 468, ¶18-20.

scheduled to be on the agenda for the September 19, 2002 council meeting. Under Sections 8 and 9, Article XVIII of the Ohio Constitution, September 6, 2002, was the last day for council to submit the proposed charter amendment to Westlake electors at the November 5, 2002 general election. According to the relators, placing the charter amendment issue on a special election ballot rather than on the November 5 general election ballot would cost between $28,000 and $30,000.

{¶10} On September 6, 2002, relators, the committee and its members, filed this action for a writ of mandamus to compel respondents, the city of Westlake, the city council, and Prehoda, to submit the petition to the Cuyahoga County Board of Elections and to have the proposed charter amendment placed on the November 5, 2002 general election ballot. Respondents filed an answer and a motion for judgment on the pleadings, and the parties filed evidence and briefs pursuant to the expedited schedule in S.Ct.Prac.R. X(9). On September 19, 2002, the city council did not place the proposed charter amendment on the ballot.

Motion for Judgment on the Pleadings

{¶11} Respondents request judgment on the pleadings under Civ.R. 12(C).

{¶12} We deny the motion because, like other procedural motions, a motion for judgment on the pleadings is inappropriate in expedited election cases filed here. *State ex rel. Toledo v. Lucas Cty. Bd. of Elections* (2002), 95 Ohio St.3d 73, 74, 765 N.E.2d 854. "Under S.Ct.Prac.R. X(9), the presentation of evidence and briefs on the merits in expedited election cases is provided in lieu of a S.Ct.Prac.R. X(5) dismissal determination, making procedural motions generally inapplicable." Id., citing *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 111, 712 N.E.2d 696.

{¶13} Moreover, as discussed later, it does not appear beyond doubt that the committee and its members can prove no set of facts warranting the requested relief, after construing all material factual allegations in the complaint and all reasonable inferences therefrom in their favor.

**{¶14}** Therefore, we deny respondents' motion for judgment on the pleadings.

S.Ct.Prac.R. X(9)

**{¶15}** Respondents claim that they have no duty to take any action in regard to the November 5 election. They assert therefore that this case is not an expedited election case and should not proceed under the schedule in S.Ct.Prac.R. X(9). That rule provides an expedited evidence and briefing schedule if "an original action relating to a pending election * * * is filed within 90 days prior to the election." Relators' mandamus complaint relates to the November 5, 2002 election and was filed within 90 days prior to the election. Therefore, S.Ct.Prac.R. X(9) applies, and respondents' contention is meritless.

Laches

**{¶16}** Extreme diligence and promptness are required in election-related matters, and " '[i]f a party seeking extraordinary relief in an election-related matter fails to exercise the requisite diligence, laches may bar the action.' " *State ex rel. Carberry v. Ashtabula* (2001), 93 Ohio St.3d 522, 523, 757 N.E.2d 307, quoting *State ex rel. Hills Communities, Inc. v. Clermont Cty. Bd. of Elections* (2001), 91 Ohio St.3d 465, 467, 746 N.E.2d 1115.

**{¶17}** Respondents assert that relators' claims are barred by laches because they could have or should have instituted expedited election proceedings on August 9 or August 21. But respondents did not divulge the rationale for their reliance on a signature requirement of 1,637 valid signatures until August 21, and their advice and improper petition forms given to relators by the board of elections caused relators' subsequent withdrawal of their initial petition. After relators filed a second petition on September 3, respondents had sufficient opportunity to have the board of elections verify the number of valid signatures on that petition and to place the proposed charter amendment on the November 5, 2002 election ballot if the petition contained sufficient valid signatures. When the city council failed to do so at its

September 5 meeting, relators waited only *one day* to file this expedited election case on September 6. In addition, briefing and evidence in this case were completed before the R.C. 3509.01 deadline to have absentee ballots printed and ready for use.

**{¶18}** Under these circumstances, relators exercised the diligence required in election cases. The cases cited by respondents are distinguishable. Cf. *State ex rel. Manos v. Delaware Cty. Bd. of Elections* (1998), 83 Ohio St.3d 562, 701 N.E.2d 371; *State ex rel. Newell v. Tuscarawas Cty. Bd. of Elections* (2001), 93 Ohio St.3d 592, 757 N.E.2d 1135.

**{¶19}** In *Manos*, 83 Ohio St.3d at 563-564, 701 N.E.2d 371, the relators waited 28 days after a referendum petition was transmitted by the city clerk and filed with the board of elections to file their written protest although they knew the basis of most of their objections even before the petition was filed, and by the time they filed their prohibition action, the date to print and make absentee ballots ready for use by electors had already passed. In *Newell*, 93 Ohio St.3d at 595-596, 757 N.E.2d 1135, the relator waited 20 days after a petition was filed to protest and another 14 days thereafter to file an action for extraordinary relief, which was after statutory deadlines to have absentee ballots printed and ready for use. The delays here were not as lengthy, and the case was fully briefed before the statutory deadline for absentee ballots had passed.

**{¶20}** Therefore, relators' claims are not barred by laches, and we proceed to consider the merits.

6

Mandamus:  Charter Amendment Provisions

**{¶21}** In order to be entitled to the writ of mandamus, the committee and its members must establish a clear legal right to have respondents submit the petition to the Cuyahoga County Board of Elections and have the charter amendment issue placed on the November 5, 2002 general election ballot, a corresponding clear legal duty on the part of respondents to do so, and the lack of an adequate remedy in the ordinary course of law.  *State ex rel. Moore v. Malone*, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶20.  Given the proximity of the pertinent election, the committee and its members have established that they lack an adequate remedy in the ordinary course of law.  Id.; *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291-292, 649 N.E.2d 1205.

**{¶22}** For the remaining requirements for a writ of mandamus, the committee and its members claim that the charter amendment provisions of the Ohio Constitution and the Westlake Charter both specify the November 2001 election as the applicable election to determine the number of valid signatures required here and that to the extent they conflict, the Constitution controls. Respondents counter that there is no conflict and that the charter controls as a supplement to the Constitution, but that even if the constitutional provisions control, they have no duty to submit the proposed charter amendment to the electorate at the November 5, 2002 general election.

**{¶23}** Section 7, Article XVIII of the Ohio Constitution authorizes municipal corporations to adopt and amend a home rule charter, and Sections 8 and 9 prescribe the procedures for doing so.  "Section 9 of Article XVIII, which incorporates the requirements of Section 8, allows, and on petition by ten percent of the electors, *requires*, the legislative authority of any city, *e.g.*, city council, to 'forthwith' authorize by ordinance an election on the charter amendment issue." (Emphasis sic.)  *State ex rel. Commt. for Charter Amendment Petition v. Avon* (1998), 81 Ohio St.3d 590, 592, 693 N.E.2d 205.

**{¶24}** The number of valid signatures required to warrant placement of a proposed charter amendment before the voters is ten percent of the number of votes cast at the last preceding general municipal election. *State ex rel. Huebner v. W. Jefferson Village Council* (1996), 75 Ohio St.3d 381, 384, 662 N.E.2d 339; Sections 8, 9, and 14, Article XVIII, Ohio Constitution; see, also, 1 Gotherman & Babbit, Ohio Municipal Law (2d Ed.2002 Supp.) 12, Section 4.02.

**{¶25}** Section 2, Article IX of the Westlake Charter establishes the following valid-signature threshold:

**{¶26}** "The Council may, by affirmative vote of two thirds (2/3) of its members, submit any *proposed amendment to this Charter or a revised or amended Charter to the electors*; or, upon receipt of *a petition* signed by not less than ten percent (10%) of the total electors voting at the last regular municipal election *setting forth any proposed amendment to this Charter or a revised or amended Charter*, it shall submit *such proposed amendment* to the electors."  (Emphasis added.)

**{¶27}** Respondents relied on this charter provision to determine that the petition did not contain the requisite signatures from the last regular municipal election *at which a proposed charter amendment was on the ballot.*  In other words, respondents interpreted the foregoing charter provision to refer to the last regular municipal election at which a charter amendment issue was voted upon.

**{¶28}** Respondents' interpretation is erroneous.  Absent any provision in the Westlake Charter regarding the interpretative issues involved, the court may apply the general laws regarding statutory interpretation. *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 73, 647 N.E.2d 769. Therefore, the charter must be construed so as to harmonize its provisions with Sections 8, 9, and 14, Article XVIII of the Ohio Constitution, and language used in the charter should be construed according to its ordinary and common usage.  See,

e.g., *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 127, 698 N.E.2d 987; cf. R.C. 1.47(A).

{¶29} In applying the foregoing interpretative rules here, the signature requirement of Section 2, Article IX of the Westlake Charter does not conflict with the constitutional provisions in this instance. Reading the phrase "setting forth any proposed amendment to this Charter or a revised or amended Charter" in the context of Section 2 and according the language its ordinary and common usage, it manifestly modifies "petition" and cannot possibly modify "last regular municipal election." In fact, "*such* proposed amendment" refers to the phrase "petition * * * setting forth any proposed amendment to this Charter" in Section 2 rather than "last regular municipal election."

{¶30} Moreover, to the extent that the charter could be construed to conflict with Ohio constitutional provisions, the constitutional provisions would prevail.

{¶31} "By reason of Sections 3 and 7 of Article XVIII of the Ohio Constitution, a charter city has all powers of local self-government *except to the extent that those powers are taken from it or limited by other provisions of the Constitution* or by statutory limitations on the powers of the municipality which the Constitution has authorized the General Assembly to impose." (Emphasis added.) *Bazell v. Cincinnati* (1968), 13 Ohio St.2d 63, 42 O.O.2d 137, 233 N.E.2d 864, paragraph one of the syllabus; *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 541-542, 697 N.E.2d 181. The "manifest object" of Section 9 of Article XVIII "is to provide the procedure for the submission of a charter amendment to electors" and these "requirements are clear and complete, and are not to be added to or subtracted from." *Billington v. Cotner* (1971), 25 Ohio St.2d 140, 146, 54 O.O.2d 270, 267 N.E.2d 410.

{¶32} When the amendment provisions of a charter conflict with constitutional charter amendment provisions, the Constitution prevails because "[t]he paramount authority must prevail over the subordinate authority." *State ex*

*rel. Hinchliffe v. Gibbons* (1927), 116 Ohio St. 390, 395, 156 N.E. 455; *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 335-336, 617 N.E.2d 1120; *Huebner*, 75 Ohio St.3d at 383-384, 662 N.E.2d 339.

{¶33} The cases that respondents cite in support of their contention that conflicting charter provisions apply are inapposite. Cf. *Toledo*, 95 Ohio St.3d 73, 765 N.E.2d 854; *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 17, 577 N.E.2d 645; *State ex rel. Moore v. Malone*, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812. Neither *Toledo* nor *Moore* involved the charter amendment procedure, and in *Bedford*, 62 Ohio St.3d at 22, 577 N.E.2d 645, we specified that although procedures may be added to the constitutional charter amendment provisions, an addition would be permissible only "if the additions do not conflict with the Ohio Constitution."

{¶34} Therefore, in accordance with Sections 8, 9, and 14 of Article XVIII of the Ohio Constitution, and consistent in this case with the plain language of Section 2, Article IX of the Westlake Charter, the committee's petition required the number of valid signatures equal to *ten percent* of the *number of votes cast at the last preceding general municipal election*. Sections 8 and 9 of Article XVIII of the Ohio Constitution also prevail over any conflicting provision in Section 2, Article IX of the Westlake Charter concerning the timing of the submission of charter amendments to the electorate. See *Semik*, 67 Ohio St.3d 334, 617 N.E.2d 1120.

Validity of Charter Amendment Petition

{¶35} In assessing the validity of the committee's charter amendment petition, the "last preceding general municipal election" was the November 2001 election. See Section 1, Article VII, Westlake Charter ("A general municipal election for the purpose of the election of officers provided for in this Charter shall be held on the first Tuesday after the first Monday in November in odd-numbered years"); R.C. 3501.01(A) and (B); Section 1, Article XVII, Ohio Constitution. This was also the "last regular municipal election" for purposes of Section 2, Article IX

of the Westlake Charter. The total number of votes cast at the November 2001 election was 5,383. The requisite number of signatures was thus ten percent of 5,383, which was 539.

{¶36} Because the petition contained 735 valid signatures, it had sufficient valid signatures to warrant placement on the election ballot.

### November 5, 2002 Election

{¶37} The committee and its members seek a writ of mandamus to compel respondents to submit the petition to the board of elections and to have the proposed charter amendment placed on the November 5, 2002 general election ballot.

{¶38} Under Section 8, Article XVIII of the Ohio Constitution, as incorporated by Section 9, the Westlake City Council had a duty to "forthwith" enact an ordinance to submit the proposed charter amendment to Westlake electors. "Forthwith" means immediately. *State ex rel. Concerned Citizens for More Professional Govt. v. Zanesville City Council* (1994), 70 Ohio St.3d 455, 457, 639 N.E.2d 421. "The ordinance providing for the submission of such question shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid." Section 8, Article XVIII, Ohio Constitution; cf. Section 2, Article IX, Westlake Charter; see, also, *Semik*, 67 Ohio St.3d 334, 617 N.E.2d 1120.

{¶39} When a municipal legislative authority erroneously fails to submit a charter amendment when it is presented with a legally sufficient petition, extraordinary relief in mandamus is available to order placement on the pertinent election ballot. *State ex rel. Commt. for the Charter Amendment Petition v. Hamilton* (2001), 93 Ohio St.3d 508, 509, 757 N.E.2d 294.

{¶40} As regular municipal elections are in odd-numbered years, the next one is in November 2003, which is more than 120 days after the Westlake City

Council had the opportunity on September 5, 2002, to pass the ordinance to place the proposed charter amendment on the November 5, 2002 election ballot. Section 1, Article XVII, Ohio Constitution; R.C. 3501.01(B); Section 1, Article VII, Westlake Charter.

{¶41} Respondents consequently claim that they have no legal duty to place the proposed charter amendment on the November 5, 2002 election ballot because they have discretion under Section 8, Article XVIII of the Ohio Constitution to order a special election at any time within 60 and 120 days after they could have passed an ordinance submitting it to the electorate.

{¶42} Nevertheless, where a municipal legislative authority has the opportunity to adopt an ordinance to place a proposed charter amendment on a regularly scheduled election ballot in an even-numbered year but refuses to do so for unlawful reasons, a writ of mandamus will issue to compel its submission to the electors on that ballot instead of at a later special election. See *Concerned Citizens*, 70 Ohio St.3d at 459, 639 N.E.2d 421; *State ex rel. Citizens for a Better Portsmouth v. Sydnor* (1991), 61 Ohio St.3d 49, 53, 572 N.E.2d 649; *State ex rel. Jurcisin v. Cotner* (1984), 10 Ohio St.3d 171, 173, 10 OBR 503, 462 N.E.2d 381.

{¶43} On September 5, 2002, the city council had the opportunity to add the ordinance submitting the proposed amendment to Westlake electors to its agenda and enact the ordinance. The city council, however, refused to do so because of its frivolous claim that the petition contained insufficient signatures, its irrelevant claims of defending the charter, and the city law director's concerns that the amendment, if approved, would be unconstitutional.[3] Although the city council now contends that it needed more time to exercise its limited authority to review

---

3. Challenges to the constitutionality of a proposed charter amendment are premature when the amendment has not yet been approved by voters. *Jurcisin v. Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St.3d 137, 519 N.E.2d 347, at paragraph four of the syllabus; cf. *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114.

the sufficiency of the petition, this contention is belied by the statements made by council members at the September 5 council meeting, the August 21, 2002 letter from the law director to the committee, and the city's continued claim that the petition contains an insufficient number of valid signatures. Nowhere in the transcript of the September 5 council meeting is there any assertion by council or the law director that council needed more time to determine the sufficiency of the petition. The board of elections had already determined that the petition contained 735 valid signatures.

**{¶44}** In addition, even if the city council were ultimately to place the charter amendment issue before the electorate on a subsequent election ballot, which council failed to do at its September 19 meeting, it would not render the committee's claims moot. See, e.g., *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 57-58, 641 N.E.2d 1075.

**{¶45}** Therefore, the committee and its members are entitled to a writ of mandamus to compel respondents to enact an ordinance to submit the petition to the board of elections and to have the proposed charter placed on the November 5, 2002 general election ballot. Although this election is not the "next regular municipal election," it constitutes a regularly scheduled "special election to be called and held within the time aforesaid." Section 8, Article XVIII, Ohio Constitution; *Concerned Citizens*, 70 Ohio St.3d at 460, 639 N.E.2d 421, fn. 1.

Attorney Fees

{¶46} Relators also request attorney fees.  We award attorney fees because relators' action saved Westlake and its residents the expense of a special election following the regularly scheduled election on November 5, 2002, respondents did not have any reasonable basis for failing to place the charter amendment issue on that ballot, and relators gave security for costs, as required by R.C. 733.59.  *Commt. for Charter Amendment Petition*, 81 Ohio St.3d at 595-596, 693 N.E.2d 205.  Relators are ordered to submit a bill and documentation to support their request for attorney fees within ten days of this judgment, in accordance with the guidelines in DR 2-106.  Respondents may file a memorandum in opposition within ten days thereafter.

Conclusion

{¶47} Therefore, we grant a writ of mandamus compelling respondents to place the proposed charter amendment on the November 5, 2002 election ballot, award attorney fees to relators, and order relators to submit a bill and documentation in support of their request for attorney fees.

Writ granted.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————

Phillips & Co., L.P.A., and Gerald W. Phillips, for relators.

David R. Harbarger, Westlake Law Director; Roetzel & Andress, L.P.A., Doug S. Musick and Vincent Squillace III, for respondents.

————————