[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Maxcy v. Saferin,* Slip Opinion No. 2018-Ohio-4035.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4035

STATE EX REL. MAXCY ET AL. *v.* SAFERIN ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Maxcy v. Saferin,* Slip Opinion No. 2018-Ohio-4035.]

*Mandamus—Writ of mandamus sought to compel board of elections to place a proposed charter amendment on the ballot for the November 2018 ballot—Article XVIII, Sections 8 and 9 of the Ohio Constitution require a municipal legislative authority to submit a proposed charter amendment to the electors by ordinance—Because city council did not enact an ordinance submitting the proposed amendment to the board of elections, relators did not have a clear legal right to have the board of elections place the proposed amendment on the ballot—Writ denied.*

(No. 2018-1242—Submitted September 25, 2018—Decided October 4, 2018.)

IN MANDAMUS.

_____

**KENNEDY, J.**

{¶ 1} In this expedited election case, relators, Rebecca C.S. Maxcy, David Ball, Sandy Bashaw, and Sean M. Nestor, seek a writ of mandamus to compel respondents, the Lucas County Board of Elections and its members, Bruce Saferin, Brenda Hill, Joshua Hughes, and David Karmol, to place a proposed charter amendment on the November 6, 2018 general-election ballot. Because the submission of the proposed charter amendment to the board of elections did not follow the specific procedure outlined in Article XVIII, Sections 8 and 9 of the Ohio Constitution—which require the legislative body of the municipality to pass an ordinance instructing the board of elections to place the proposed amendment on the ballot upon submission of a sufficient petition—we deny the writ.

## BACKGROUND

{¶ 2} On August 7, 2018, relators submitted part-petitions in support of a proposed amendment to the Toledo city charter. Titled "Keep the Jail in Downtown Toledo," the proposed amendment would

(1) require that any new or renovated jail, correctional facility, prison, justice complex, correctional treatment facility, detention center, work release, "or other building that houses criminals or accused criminals, within the City of Toledo limits," be located in the Downtown Overlay District, as defined in the Toledo Municipal Code;

(2) declare it unlawful for any corporation or government to violate the rights secured by the amendment;

(3) declare that any corporation or government that violates any provision of the amendment "shall be sentenced to pay the maximum fine allowable under State law for that violation"; and

(4) authorize the city of Toledo, or any resident of the city, to enforce the prohibitions of the amendment through an action in the Lucas County Court of Common Pleas, and to recover all costs of litigation, including attorney fees.

2

{¶ 3} The petition's first page contained the following language:

> **To the Council, the legislative authority of the City of Toledo, Ohio:**
> We, the undersigned, qualified electors of the City of Toledo, Ohio respectfully petition the legislative authority to forthwith provide by Ordinance, for the submission to the electors of the City of Toledo, the following proposed amendment to the Charter of the City of Toledo * * *.

(Boldface sic.)

{¶ 4} On August 13, 2018, the Lucas County Board of Elections verified to the clerk of the Toledo city council that relators had submitted a sufficient number of petition signatures to qualify the measure for the ballot. Relators allege that "[o]n or about August 14, 2018, the Clerk of Toledo City Council, pursuant to his responsibility under § 5 of the Toledo Municipal Charter, instructed the [board] to put the Proposed Amendment on the November 6, 2018 ballot for a public vote." Section 5 of the city charter reads:

> Any amendment to this Charter may be submitted to the electors of the City for adoption by resolution of the Council, two-thirds of the members thereof concurring, and shall be submitted when a petition is filed with the Clerk of the Council setting forth the proposed amendment and signed by not less than ten percent of the electors.

{¶ 5} On August 28, 2018, the board voted four to zero to refuse to place the charter amendment on the ballot on the ground that it contained provisions beyond the authority of the city to enact by initiative.

{¶ 6} On August 31, relators filed this action seeking a writ of mandamus to compel the board to place the proposed charter amendment on the November 6, 2018 ballot. The relators allege that

> the [board] engaged in unconstitutional pre-election review of the substance of the Proposed Charter Amendment and voted unanimously to reject the Proposed Amendment from the ballot ostensibly because the Proposed Charter Amendment contains provisions beyond the power of the City of Toledo to enact and that the Ohio Supreme Court "requires" the Proposed Amendment to be stricken.

{¶ 7} Respondents admitted in their answer that the board "examine[d] the proposed initiative–the Downtown Jail Initiative–in accordance with its obligations under Title 35 of the Ohio Revised Code and as set forth by this Court in *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 95 N.E.3d 329 (2017)."

{¶ 8} The parties have filed briefs and evidence in accordance with the calendar for expedited election cases in S.Ct.Prac.R. 12.08.

## LAW AND ANALYSIS

*The amendment of a city charter is controlled by Article XVIII, Sections 8 and 9 of the Ohio Constitution, not Article II, Section 1f*

{¶ 9} The right to amend a municipal charter differs from the right of initiative to enact a municipal ordinance, and the two rights are addressed in separate articles of the Ohio Constitution. The procedure to amend a municipal charter—a matter concerning the structure of a municipal government—is set forth

in Article XVIII, Sections 8 and 9 of the Ohio Constitution. In contrast, Article II deals generally with the legislative power, and Section 1f of Article II reserves the right of initiative to the people of each municipality and states that "such powers shall be exercised in the manner now or hereafter provided by law."

{¶ 10} Article XVIII, Section 9 is a specific provision; Article II, Section 1f is general. "Special constitutional provisions relating to a subject will control general provisions in which, but for such special provisions, the subject might be regarded as embraced." *Akron v. Roth*, 88 Ohio St. 456, 461, 103 N.E. 465 (1913). Article XVIII, Sections 7, 8, and 9 provide specific procedures for amending a charter, while Article II, Section 1f does not. If the framers of the Ohio Constitution had intended Article II, Section 1f to control the amendment of a municipal charter, there would have been no need to provide a separate constitutional provision specifically addressing the procedure for amending a municipal charter. To hold that Article II, Section 1f controls would be to render Article XVIII, Section 9 superfluous.

{¶ 11} Moreover, because Article II, Section 1f states that the power of initiative "shall be exercised in the manner now or hereafter provided by law," municipalities could alter the requirements set forth in Article XVIII, Section 9 for the amendment of a charter. For instance, Section 75, Toledo City Charter, states that petitions for ordinances proposed by initiative must contain signatures "equal in number to twelve percent (12%) of the total number of votes cast for all candidates for Mayor at the most recent general municipal election at which the Mayor was elected." But this court has held on multiple occasions that Article XVIII, Section 9, read in pari materia with Article XVIII, Section 14, provides that "the number of valid part-petition signatures necessary to establish a right to the placement of a proposed amendment of a municipal charter before the voters * * * is ten percent of the electors of the municipality based upon the total number of votes cast at the last preceding general municipal election." *State ex rel. Huebner*

*v. W. Jefferson Village Council*, 75 Ohio St.3d 381, 384, 662 N.E.2d 339 (1995). *See State ex rel. Wilen v. Kent*, 144 Ohio St.3d 121, 2015-Ohio-3763, 41 N.E.3d 390, ¶ 5; *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 24. "We should be hesitant to adopt an analysis that would allow a party to evade the procedure expressly provided by the Constitution for amending a municipal charter simply by characterizing the petition as seeking an initiative rather than a petition for a charter amendment." *State ex rel. Twitchell v. Saferin*, ___ Ohio St.3d ___, 2018-Ohio-3829, ___ N.E.3d ____, ¶ 32 (Kennedy, J., concurring in judgment only).

{¶ 12} Despite the fact that relators seek to amend the Toledo city charter, implicating Article XVIII, Sections 8 and 9, they present arguments as if they are exercising their right to initiative under Article II, Section 1f. Related to that assertion is relators' argument that 2016 Sub.H.B. No. 463 ("H.B. 463"), which amended R.C. 3501.11 to require a board of elections to examine an initiative petition "to determine whether the petition falls within the scope of authority to enact via initiative," violates the separation-of-powers doctrine. Those arguments are no doubt tied to this court's recent jurisprudence regarding the amendment of municipal charters.

{¶ 13} We acknowledge that the board relied on our recent decision in *Flak*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, which confused the law by stating that a county board of elections has authority to determine whether a charter amendment exceeds the scope of authority to enact by initiative. *Flak* failed to recognize that the people's authority to amend a municipal charter arises only from Article XVIII, Section 9, not from Article II, Section 1f, and that caselaw construing the right of initiative afforded by Article II, Section 1f does not apply to the review of a proposed charter amendment. In *Flak*, we mistakenly conflated our jurisprudence regarding the amendment of municipal charters under Article XVIII, Section 9 of the Ohio Constitution with our jurisprudence regarding citizens'

exercise of the right to initiative under Article II, Section 1f. *See Twitchell at* ¶ 17 (Kennedy, J., concurring in judgment only). As we discuss below, boards of elections have no authority to review the substance of a proposed municipal-charter amendment; therefore, *Flak* should no longer be relied on as authority to the contrary. And because R.C. 3501.11(K)(2) expressly applies to initiative petitions and the amendment of *county* charters but does not mention the amendment of municipal charters, its constitutionality should be addressed in a case involving a county charter or a municipal ordinance proposed by initiative.

{¶ 14} The dissent frets that we should not apply constitutional provisions specifically addressing the amendment of a municipal charter to a case involving a proposed amendment to a municipal charter, because the parties have not argued that Article XVIII, Section 9 and caselaw construing that provision are controlling. But the parties can be forgiven for failing to brief this issue, because this court's short line of cases, beginning with *Flak*, mistakenly diverted from what had been settled law. Our inadvertence is not entitled to the protection of stare decisis. And while briefing would be helpful, it is impractical or impossible here given the compressed timeframe of an expedited election case. In these circumstances, our prudential policy against addressing arguments not raised by the parties is not a barrier to addressing and remedying a clear mistake before it is repeated again. The alternative is to stay silent and allow boards of elections to continue to deny ballot access based on this court's erroneous statement of law rather than simply return to our near-century of jurisprudence regarding how to address proposals for the amendment of municipal charters. *See, e.g.*, *State ex rel. Hinchliffe v. Gibbons*, 116 Ohio St. 390, 395, 156 N.E. 455 (1927). If the dissent were able to present a genuine question of how Article XVIII, Sections 8 and 9 apply rather than merely attempt to sow confusion to justify reaching a constitutional issue that is not before us, we would be hesitant to proceed without briefing. But here, we stand on the rock of our case precedent providing the rule of decision.

*Article XVIII, Sections 8 and 9 of the Ohio Constitution require the legislative authority to submit a proposed charter amendment to the electors by ordinance*

{¶ 15} Relators seek to amend the city charter of Toledo. Article XVIII, Section 7 of the Ohio Constitution authorizes a municipality to "frame and adopt or amend" a charter form of government. Article XVIII, Section 9 sets forth the specific procedure for amending a municipal charter and provides:

> Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority. The submission of proposed amendments to the electors shall be governed by the requirements of section 8 as to the submission of the question of choosing a charter commission * * *. If any such amendment is approved by a majority of the electors voting thereon, it shall become a part of the charter of the municipality.

{¶ 16} This court has consistently recognized that petitions containing signatures from "ten per centum of the electors of the municipality setting forth any such proposed amendment," Article XVIII, Section 9, Ohio Constitution, triggers the duty of the legislative authority to submit the proposed charter amendment to the electorate. *Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 22; *State ex rel. Commt. for Charter Amendment Petition v. Avon*, 81 Ohio St.3d 590, 592, 693 N.E.2d 205 (1998); *Morris v. Macedonia City Council*, 71 Ohio St.3d 52, 54, 641 N.E.2d 1075 (1994). Contrary to the dissent's tortured, nonsensical reading of the provision, Article XVIII, Section 9 has always been read to mean

8

that there are two methods to put a proposed charter amendment on the ballot—by a two-thirds vote of the legislative authority *and* by petitions signed by 10 percent of the electorate. This is both the literal interpretation and the only plausible interpretation, and it is telling that the only authority mustered by the dissent is caselaw directly contradicting its position.

{¶ 17} Article XVIII, Section 9 requires that charter amendments are submitted to the electors in the same manner as in Article XVIII, Section 8, which provides for submitting to the electors the question whether a charter commission should be chosen to frame a charter. Article XVIII, Section 8 states, "The legislative authority of any city or village may by a two-thirds vote of its members, and upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question, 'Shall a commission be chosen to frame a charter.' " Although the dissent expresses manufactured confusion over the extent of Section 8's application to charter amendments, this court has been clear as to which procedural requirements from Section 8 apply to charter amendments under Section 9:

> Article XVIII, Section 8 of the Ohio Constitution imposes two relevant time requirements on municipal legislatures when they receive petitions for charter amendments.
>
> (1) If the petition contains a sufficient number of valid signatures, the legislature must "forthwith" provide by ordinance for the submission of the proposed amendment to the electors.
>
> (2) The ordinance must require that the matter be submitted at the next regular municipal election if one will occur no more than 120 days, and no less than 60 days, after passage of the ordinance.

(Footnote omitted.) *State ex rel. Commt. for Charter Amendment Petition v. Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 3-5.

{¶ 18} "The 'manifest object' of Section 9 of Article XVIII 'is to provide the procedure for the submission of a charter amendment to electors' and these 'requirements are clear and complete, and are not to be added to or subtracted from.' " *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake* at ¶ 31, quoting *Billington v. Cotner,* 25 Ohio St.2d 140, 146, 267 N.E.2d 410 (1971). We have therefore explained that " 'Section 9 of Article XVIII, which incorporates the requirements of Section 8, allows, and on petition by ten percent of the electors, *requires*, the legislative authority of any city, *e.g.*, city council, to "forthwith" authorize by ordinance an election on the charter amendment issue.' (Emphasis sic.)" *Westlake* at ¶ 23, quoting *State ex rel. Commt. for Charter Amendment Petition v. Avon*, 81 Ohio St.3d 590, 592, 693 N.E.2d 205 (1998).

{¶ 19} And once the legislative body of the municipality passes an ordinance placing the proposed charter amendment on the ballot, the duty of the board is to simply add the proposed charter amendment to the ballot. We have held that in placing a proposed amendment to a municipal charter on the ballot, the "board of elections has nothing but a ministerial role under the Constitution." *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections*, 67 Ohio St.3d 334, 337, 617 N.E.2d 1120 (1993).

*Relators failed to allege or prove that Toledo city council passed an ordinance submitting the proposed charter amendment to the electors*

{¶ 20} Relators focus this case on the role of the board in refusing to put the charter amendment on the ballot. But this case turns not on the action of the board, but the inaction of city council, so the board's reasoning in reaching its decision is not at issue; without an ordinance instructing the board to place the proposed amendment on the ballot, the board lacked the authority to add the proposed charter amendment to the ballot. The legislative authority has the duty—enforceable

through a mandamus action—to enact an ordinance to place the matter on the ballot. *Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 24.

{¶ 21} In this case, there is neither allegation nor evidence that the city council passed an ordinance instructing the board to place the proposed amendment on the ballot. Rather, in an attempt to comply with the procedure set forth in Section 5 of the Toledo City Charter, the clerk of the city council submitted the petition directly to the board. But that provision conflicts with the specific procedure set forth in the Constitution requiring the passage of an ordinance by the legislative authority, and in such a conflict, the constitution prevails.

> When the amendment provisions of a charter conflict with constitutional charter amendment provisions, the Constitution prevails because "[t]he paramount authority must prevail over the subordinate authority." *State ex rel. Hinchliffe v. Gibbons* (1927), 116 Ohio St. 390, 395, 156 N.E. 455; *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 335-336, 617 N.E.2d 1120; [*State ex rel. Huebner v. W. Jefferson Village Council*]*,* 75 Ohio St.3d [381] 383-384, 662 N.E.2d 339 [(1996)].

*Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 32.

{¶ 22} In their petition for an amendment of the charter, relators properly called on the "legislative authority to forthwith provide by Ordinance, for the submission to the electors of the City of Toledo, the following proposed amendment to the Charter of the City of Toledo." The city council failed to fulfill that duty in the first instance, but relators have not named it as a party in this mandamus action or sought a writ compelling it to comply with that duty. And the board of elections had no duty to place the proposed charter amendment on the ballot unless and until the city council passed an ordinance instructing the board to do so.

**{¶ 23}** Accordingly, the board of elections' decision not to place the proposed charter amendment on the ballot was correct; its reasoning was not.

*Relators are not entitled to relief in mandamus*

**{¶ 24}** To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of a respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Article XVIII, Sections 8 and 9 of the Ohio Constitution require the legislative authority to submit a proposed charter amendment to the electors by ordinance. Because the Toledo city council failed to pass an ordinance submitting the proposed charter amendment in this case to the electors, the Lucas County Board of Elections was without authority to exercise even its ministerial duty to place the proposed amendment on the ballot. Because the proposed charter amendment was never properly before the board, we cannot say that relators had a clear legal right to their requested relief or that the board had a clear duty to provide it. Therefore, mandamus does not lie against the board, and relators have not sought a writ compelling the city council to submit the proposed charter amendment to the electors by ordinance.

**{¶ 25}** Accordingly, we deny the writ.

Writ denied.

O'DONNELL, FRENCH, and DEWINE, JJ., concur.

FISCHER, J., dissents, with an opinion joined by O'CONNOR, C.J., and DEGENARO, J.

_____

**FISCHER, J., dissenting.**

**{¶ 26}** I respectfully dissent. I would address the constitutional issue actually raised, briefed, and argued by the parties in this case, and I would hold that a limited portion of 2016 Sub.H.B. No. 463 ("H.B. 463") is unconstitutional for the

reasons stated in my separate opinion in *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, ¶ 54 (Fischer, J., dissenting).

{¶ 27} The majority opinion may in many ways undermine the rights that are guaranteed to Ohioans under their own state constitution. First, the majority opinion applies a provision of the state constitution that may address only referenda in municipalities (and thus is potentially irrelevant to this case) to, in effect, eliminate the right of initiative for citizens of a municipality, even though that right is specifically reserved to the electors. Second, the majority opinion further confuses the law involving Ohioans' state constitutional right of initiative and the roles of and relationships among boards of elections, municipalities, and electors. Third, the majority opinion could undermine state constitutional provisions invoking separation of powers and judicial review and authority, as well as free speech. And it is troubling that the majority opinion might undermine all these constitutional protections for the citizens of Ohio by using a legal theory that was never briefed, never argued, and never even mentioned in any of the filings in this case.

{¶ 28} This court has previously sua sponte ordered additional briefing on an issue that came to light after the initial briefing was complete. *See, e.g.*, *Dodd v. Croskey*, 140 Ohio St.3d 1406, 2014-Ohio-3708, 14 N.E.3d 1052. The court could order additional briefing on the issue, which is raised for the first time in the majority opinion. The court could also set an expedited timeline for such briefing. The court has not done so. The majority opinion thus decides an issue of great constitutional importance without the benefit of briefing or argument. The majority actively takes an unrequested action that could well deny the people of Ohio some of their unique and coveted state constitutional rights.

## I. The Proposed Amendment Was Properly Submitted to the Board of Elections

{¶ 29} The issue whether Article XVIII, Sections 8 and 9 of the Ohio Constitution control in this case has not been raised or briefed by the parties. In fact, those sections of the Ohio Constitution are not mentioned in any of the briefs or filings. Because issues regarding Article XVIII, Sections 8 and 9 of the Ohio Constitution were not raised or briefed, we should be hesitant to decide this case based on those sections, for justice is far better served when we have had the benefit of briefing and argument before we make a final determination. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19; *see also Apple Group, Ltd. v. Granger Twp. Bd. of Zoning Appeals*, 144 Ohio St.3d 188, 2015-Ohio-2343, 41 N.E.3d 1185, ¶ 52 (Kennedy, J., dissenting). Furthermore, " 'it is not generally the proper role of this court to develop a party's arguments.' " *Snodgrass v. Testa*, 145 Ohio St.3d 418, 2015-Ohio-5364, 50 N.E.3d 475, ¶ 31, quoting *In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 19. As more fully explained below, by deciding this case on a question that was not briefed, the majority opinion creates analytical problems in resolving this case. Hence, the court should not countenance this action.

{¶ 30} Assuming arguendo that a question regarding Article XVIII, Sections 8 and 9 is properly before us, my review of those provisions casts significant doubt upon the majority opinion's conclusion. Article II, Section 1(f) of the Ohio Constitution reserves the initiative and referendum powers to the people of each municipality on questions within the legislative control of municipalities. The Ohio Constitution clearly distinguishes the power of initiative from the power of referendum. *See* Article II, Section 1(g). The *initiative* power—the "first" power reserved to the people in Article II—is the power of the people to propose a constitutional amendment or law directly to the electorate. *See* Article II, Sections

14

1(a) and 1(b), Ohio Constitution. The *referendum* power—the "second" power reserved to the people in Article II—is the power of the people to order that a law passed by a legislative body be submitted for electors' approval or rejection. *See* Article II, Section 1(c), Ohio Constitution.

{¶ 31} In expressly reserving both the power of initiative *and* the power of referendum to the people of each municipality, the Ohio Constitution emphasizes that they are distinct actions. But Article II, Section 1(f) does not limit its reservation of the power of initiative solely to the power to enact municipal ordinances. Thus, unlike the majority opinion, I read Article II, Section 1(f) as applying to *all* questions that may be controlled by legislative action, including the ability to propose charter amendments.

{¶ 32} The distinction between the power of initiative and the power of referendum is important to keep in mind when reading Article XVIII, Sections 8 and 9.

{¶ 33} Given the lack of briefing on the question of how to interpret the two sections, we are unable to give full and fair consideration to how they may interact. However, my analysis of the issue reveals more than one plausible reading of those provisions. And the majority opinion's interpretation of those sections could effectively eliminate the power of the people to amend municipal charters via initiative.

**A.    Article XVIII, Section 9 May Apply Only to Referenda**

{¶ 34} I disagree with the majority opinion's conclusion that there is only one plausible reading of Article XVIII, Section 9. The majority opinion relies on decisions in which this court has interpreted Article XVIII, Section 9 to provide two methods to put a proposed charter amendment on the ballot; however, I do not find these cases to be either conclusive or persuasive.

{¶ 35} Article XVIII, Section 9 provides that charter amendments "may be submitted to the electors of a municipality by a two-thirds vote of the legislative

authority thereof, *and*, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority." (Emphasis added.) If the word "and" in this provision is interpreted literally, the process for amending a municipal charter set forth in Section 9 would always be premised upon legislative action. Under this literal reading, in order for an amendment to a charter to be submitted to the electorate, the amendment first would need to be approved by a two-thirds vote of the members of the municipality's legislative authority. Only if the legislative authority approves the amendment by a two-thirds majority would it be submitted to the electors, upon 10 percent of the electors signing petitions to put the amendment on the ballot.

{¶ 36} But this literal interpretation of Section 9 as allowing the voters to accept or reject the amendment only after the legislative authority has already acted would create only the right to referendum. Indeed, Section 9 specifically describes this process of approval as a "referendum vote." Article XVIII, Section 9 ("A copy of said charter or any amendment thereto shall be certified to the secretary of state, within thirty days after adoption by a referendum vote").

{¶ 37} If one adopts this literal reading, neither Section 8 nor Section 9 of Article XVIII addresses the power of the people to amend a municipal charter by *initiative*. Section 9 specifically provides that amendments "*may* be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof." (Emphasis added.) The use of the permissive "may," rather than the mandatory "shall," indicates that other avenues may exist for amending municipal charters. Pursuant to a literal reading of the word "and," Sections 8 and Section 9 set forth processes pertaining only to the power of referendum, not to the power of initiative, and thus those sections are irrelevant to this case, which involves an initiative petition. Therefore, under this literal reading of those provisions, relators' petition was properly submitted to the board of elections.

{¶ 38} The majority opinion rejects this literal interpretation, deeming it implausible based on this court's previous decisions; however, adopting the majority opinion's reasoning either requires this court to insert the phrase "there are two methods to put a proposed charter amendment on the ballot" as the opening clause of Article XVIII, Section 9, or to replace the word "and" with the word "or." The power to amend the Constitution is reserved to the people of Ohio. Article II, Section 1 of the Ohio Constitution. This court must therefore refrain from adding words to the Constitution or changing the words already contained in it. *See State ex rel. Ganoom v. Franklin Cty. Bd. of Elections*, 148 Ohio St.3d 339, 2016-Ohio-5864, 70 N.E.3d 592, ¶ 24 (O'Connor, C.J., concurring).

{¶ 39} I also do not agree that this literal interpretation of Article XVIII, Section 9 would render it superfluous. Under this literal reading, Article II, Section 1(f) reserves the right to amend municipal charters by initiative. This literal reading would give full effect to Article XVIII, Section 9, for that provision specifically outlines the procedure to use when municipal charters are amended through the separate power of referendum. Holding that Article II, Section 1(f) reserves the right to amend by initiative does not diminish the effect of Article XVIII, Section 9 on the procedure for amending by referendum.

{¶ 40} While it is possible that the majority opinion's interpretation is correct, the majority opinion's reasoning is unpersuasive. I am quite hesitant to reach the majority opinion's conclusion without any briefing and this court's full consideration of the issue.

**B.** **Article XVIII, Section 9 May Apply to Both Initiatives and Referenda but Does Not Require Initiative Petitions to Be Submitted by Municipal Ordinance**

{¶ 41} A second plausible reading of Article XVIII, Section 9, treating "and" as the functional equivalent of "or," would provide that charter amendments "may be submitted to the electors of a municipality by a two-thirds vote of the

legislative authority thereof, [or], upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority." Under this analysis, Article XVIII, Section 9 would allow the amendment of city charters by either initiative or referendum, thus honoring Article II, Section 1(f)'s reservation of both initiative and referendum powers to the people of a municipality.

{¶ 42} Pursuant to this reading, a charter amendment would need to be submitted to the electors by a legislative authority when ten percent of the electors have signed petitions in its favor. It is unclear what constitutes submission by a legislative authority. The majority opinion would require the legislative authority to enact a municipal ordinance. Article XVIII, Section 9, however, contains no language requiring that an ordinance be enacted.

{¶ 43} Reliance upon our cases requiring submission by ordinance seems dubious, at best. *State ex rel. Hinchliffe v. Gibbons*, 116 Ohio St. 390, 156 N.E. 455 (1927), for instance, was premised upon the wording of Cleveland's city charter, which specifically required submission by ordinance. *Id.* at 391. In *State ex rel. Blackwell v. Bachrach*, 166 Ohio St. 301, 143 N.E.2d 127 (1957), we stated:

> The very plain wording of Section 9, Article XVIII, places the duty to submit a proposed amendment to the electors upon the council and the council alone. It provides further that the submission shall be governed by the requirement of Section 8, Article XVIII, that the council shall provide by ordinance for the submission to the electors. It is clear that once a petition for a charter amendment containing sufficient valid signatures is filed with the council, the only body or person thereafter charged with any duty of submitting the question to the electors is the city council.

(Emphasis deleted.) *Id.* at 306.

{¶ **44**} Despite the assertion in *Blackwell* to the contrary, however, Section 9 does not require that submission occur by ordinance. The provision does state that "[t]he submission of proposed amendments to the electors shall be governed by the requirements of Section 8 as to the submission of the question of choosing a charter commission." But Section 9 cannot be subservient to the entirety of Section 8; otherwise, an amendment could not be submitted until 15 people were elected to frame a new charter, those 15 people actually framed a new charter, and the new charter was submitted and approved by the voters. Instead, one could read the phrase "shall be governed by the requirements of Section 8 as to the submission of the question of choosing a charter commission" as meaning that only the procedural requirements for submitting the question of choosing a charter commission would apply to amending the charter, specifically, that the amendment should "be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days" after submission of the initiative petition. Otherwise, the legislative authority "shall provide for the submission of the [amendment] at a special election to be called and held within the time aforesaid."

{¶ **45**} If the court were to adopt this interpretation of Article XIII, Section 9, it would find that the submission of the initiative petition to the board of elections in this case was proper. Relators' initial request for city council to pass an ordinance presumably relied upon a questionable line of decisions that were based upon the wording of certain city charters. Instead of passing an ordinance, however, upon receiving the initiative petition, the clerk of Toledo's city council, a representative of Toledo's legislative authority, instructed the board of elections to put the proposed amendment on the ballot. This action complied with my second plausible reading of Article XVIII, Section 9 of the Ohio Constitution, and it also followed the specific instruction of Section 5, Toledo City Charter, which does *not*

19

require passage of an ordinance before an initiative petition is submitted to the board of elections (unlike the Cleveland charter at issue in *Hinchliffe*). Under this interpretation of Article XVIII, Section 9, Toledo's municipal charter is not in conflict with the Ohio Constitution.

{¶ 46} Significantly, at least some of the decisions relied upon by the majority opinion that require a city council to pass an ordinance before an initiative petition to amend a city charter may be placed on the ballot arise under different charter requirements than Toledo has. Indeed, some of the cases cited in the majority opinion show that the particular city charters at issue contained language requiring city-council action before an initiative petition could be placed on the ballot. *Hinchliffe*, 116 Ohio St. at 391, 156 N.E. 455; *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 25-26; *State ex rel. Commt. for Charter Amendment Petition v. Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 18. In other cases cited in the majority opinion, it is not clear whether city-council action was required by the city charter at issue in the case. *See, e.g.*, *Morris v. Macedonia City Council*, 71 Ohio St.3d 52, 641 N.E.2d 1075 (1994); *State ex rel. Commt. for Charter Amendment Petition v. Avon*, 81 Ohio St.3d 590, 693 N.E.2d 205 (1998). Given the factual distinctions either present or possibly present in these cases, we should be cautious about applying those decisions in this case without briefing.

{¶ 47} I reiterate that I make no ultimate decision on the proper interpretation of Article II, Section 1(f) and Article XVIII, Sections 8 and 9 today. Instead, given the lack of briefing, the parties' acceptance of the statutory authority of the board of elections to have received the proposed amendment, and the plausible readings of the Ohio Constitution permitting the submission of the proposed amendment to the board of elections, I would not treat Article XVIII as a

barrier to this court addressing the separation-of-powers issue presented to us by the parties.

{¶ 48} I would also caution that the majority opinion's interpretation of Article XVIII could limit the initiative power reserved to the people of each municipality in Article II, Section 1(f). This decision could lead to an interpretation that all actions to amend a municipal charter—even citizen initiatives—must first be approved by "a two-thirds vote" of the legislative authority of the municipality, thus creating a situation in which municipal legislative authorities may have veto power over any proposed initiatives to amend a charter.

{¶ 49} Pursuant to a literal interpretation of the language of Article XVIII, Section 9, a municipal legislative authority is under no obligation to submit to the board of elections every charter amendment submitted to it. Because Section 9 requires a two-thirds vote of that legislative body in order for a proposed amendment to be advanced, the majority opinion's reading of the Ohio Constitution could allow a perfectly reasonable and lawful amendment to be kept from the ballot solely because a minority of the municipality's legislative authority disagrees with it. Such a situation, in which a legislative authority is given unchecked authority to prevent citizens from exercising express constitutional power, is untenable and unconstitutional.

{¶ 50} Because Article II, Section 1(f) of the Ohio Constitution expressly reserves the power of initiative to the people of municipalities, and because nothing in Article XVIII expressly constrains that power, I would hold that the language of Article XVIII, Sections 8 and 9 of the Ohio Constitution do not resolve this case or render it unnecessary for us to consider the constitutionality of the amendments to R.C. 3501.11 contained in H.B. 463, which was the issue that was briefed at length by the parties and is ripe for review. This court's delay in reaching this issue simply creates more confusion for the citizens of Ohio.

## II.     The Constitutionality of R.C. 3501.11(K) Is Ripe for Review

{¶ 51} Because relators' petition is an initiative petition, it is subject to R.C. 3501.11, which expressly requires a board of elections to "[e]xamine *each* initiative petition" (emphasis added) to determine whether it constitutes a valid exercise of the initiative power. As I have previously discussed, R.C. 3501.11(K) contains language raising separation-of-powers concerns. *See State ex rel. Twitchell v. Saferin*, ___ Ohio St.3d ___, 2018-Ohio-3829, ___ N.E.3d ____, ¶ 44 (Fischer, J., dissenting). The need to address these concerns is highlighted by the frequency with which they have been argued before us. *Id.* The parties actually briefed that issue in this case.

{¶ 52} The importance of addressing those concerns is further underscored by a recent decision by the United States District Court for the Southern District of Ohio. That court found that R.C. 3501.11(K) allows a board of elections—part of the executive branch—to determine disputed legal and constitutional issues, thus potentially blocking initiatives from the ballot without providing those parties a right to judicial review. The court then held that this procedure unreasonably infringes on the First Amendment rights of parties aggrieved by the rejection of an initiative petition. *Schmitt v. Husted*, S.D.Ohio No. 2:18-cv-966 (Sept. 19, 2018). The federal district court further held that no legitimate state interest is protected by a lack of appellate review. *Id.* Given the uncertainty regarding the constitutionality of the amendments to R.C. 3501.11 made by H.B. 463, this court needs to address the constitutional issues, which are squarely before us in this case.

## III.     Conclusion

{¶ 53} As detailed in my separate opinion in *Flak*, I would hold that pursuant to *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, the board of election's role in processing initiative petitions does not extend to evaluating the substantive ballot-worthiness of a proposal. *Flak*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d

329, at ¶ 54 (Fischer, J., dissenting). Pursuant to that opinion, I would also hold that R.C. 3501.11(K)(2) is unconstitutional, but only to the limited extent that it incorporates R.C. 3501.38(M)(1)(a). *Id.*

**{¶ 54}** I respectfully dissent and would grant the writ of mandamus. The board of elections has no authority under the Ohio Constitution to reject a charter amendment on the ground that it contained provisions that were beyond the scope of the power of referendum or initiative. That authority is reserved for the judiciary alone.

O'CONNOR, C.J., and DEGENARO, J., concur in the foregoing opinion.

_____

Warner Mendenhall, for relators.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borell, Kevin A. Pituch, and Evy M. Jarrett, Assistant Prosecuting Attorneys, for respondents.

_____